*351 OPINION OF THE COURT
Eugene M. Fahey, J.
This is a matter of first impression. The case involves the interpretation of a section of the Limited Liability Company Law, section 407 (a), which has not yet been construed by any appellate court in this state. Although the operating agreement for the limited liability company in question requires that a quorum of all members be present at any meeting in person or by proxy for action to be taken at that meeting, the statute provides that
“[wjhenever under this chapter members of a limited liability company are required or permitted to take any action by vote, except as provided in the operating agreement, such action may be taken without a meeting, without prior notice and without a vote, if . . . consents in writing, setting forth the action so taken shall be signed by the members who hold the voting interests having not less than the minimum number of votes that would be necessary to authorize . . . such action at a meeting at which all of the members entitled to vote therein were present and voted . . . .”
The issue before the court is whether a majority of the members of this limited liability company — or two out of three— can take action by written consent, or whether the operating agreement has otherwise provided. The court determines that a majority of members of the limited liability company in question may take some actions by written consent of less than all members. However, the operating agreement provides specifically in section 5.5 that certain other actions may not be taken absent approval of all members, and the court rules that the actions purportedly taken by written consent of defendants Baron and Taylor on September 16, 2005 fall within section 5.5. Thus, the actions taken on that date were null and void as in violation of the operating agreement for US Micro-Optical Solutions, LLC. The effect of the court’s ruling on the status of the limited liability company will be discussed at the end of the decision.
Background
This matter came before the court on three separate orders to show cause, concerning disputes over the continued operation of US Micro-Optical Solutions, LLC (hereinafter the LLC). The court executed three orders, reserving decision on certain issues.
*352 Initially, plaintiff Dean Overhoff brought an order to show cause on behalf of himself and the LLC seeking to have defendants enjoined from interfering with the rights of Overhoff and the LLC to continue to occupy the LLC’s leased premises at a building located at 500 Elk Street, Buffalo (hereinafter the premises), which is owned by defendant Scarp, Inc.[1] The LLC sells and distributes high quality microscopes and optical equipment (Overhoff affidavit sworn to on Sept. 19, 2005 [hereinafter Overhoff first affidavit] 1f 15). It is undisputed that, as of September 2005, Overhoff owned a 43% interest in the LLC, defendant Richard Taylor owned a 42% interest, and defendant John Baron owned a 15% interest (see transcript of oral argument [Fahey, J.], Sept. 23, 2005 at 13-14). The operating agreement for the LLC was adopted as of January 1, 2003 (see Overhoff affidavit, sworn to on Sept. 23, 2005 [hereinafter Overhoff second affidavit] exhibit A).
In an affidavit in support of his order to show cause, Overhoff averred that he was the founder, president, and general manager of the LLC (Overhoff second affidavit 11 2). In 2004, defendant Richard Taylor purchased a 42% interest in the LLC and also loaned the LLC $140,000 (Overhoff answering affidavit sworn to on Oct. 7, 2005 [hereinafter Overhoff third affidavit] 1113, exhibit A). Overhoff alleged that he and Taylor recently had had a dispute concerning proposed further loans by Taylor to the LLC, as Taylor sought to obtain in exchange a controlling membership interest (Overhoff first affidavit 1IH 30-34).
On September 15, 2005, Overhoff held a meeting of all employees of the LLC, at a location away from the premises (Overhoff first affidavit 11 37). At that meeting, Overhoff announced a plan to impose cost savings to “allow [them] to continue the business without any monies from Richard Taylor”; Taylor was not present at the meeting (id. 1111 35, 40; Taylor affidavit K 9).
The following day, Scarp evicted the LLC from the premises (Overhoff first affidavit H1Í 3-10). Overhoff alleged that the eviction by Scarp was without cause and despite an alleged two-year lease extending until August 2006 (id. 11113, 5-6). The locks on the premises were changed soon thereafter (id. 1112).
In an affidavit in opposition to plaintiffs’ order to show cause, Richard Taylor averred that, on September 16, 2005, he and the *353 third member of the LLC, Richard Baron, had executed a written consent of a majority of the membership of the LLC, purporting to take certain actions. Those actions included terminating the LLC’s lease of the premises,[2] terminating the employment of all of the LLC’s employees, and agreeing to acceptance of an alleged notice of default, dated August 31, 2005, on a promissory note from the LLC to Scarp, a company controlled by Taylor (Taylor affidavit 1Í1Í 9, 11, exhibit C). In any event, Taylor asserted that there was no “lease” to enforce, because the LLC held only an oral lease on the premises (Taylor affidavit 118 [c]).
Taylor submitted as an attachment to his affidavit the purported “written consent,” which is titled “Statement of Majority Consent in Lieu of Special Meeting of Members” of the LLC, and dated September 16, 2005 (see Taylor affidavit, exhibit C). That statement is signed by Taylor’s proxy, his son William, and by Baron. The statement purports to adopt, ratify and approve the following:
“1. Termination of the employment of all Employees of the Company.
“2. Termination and Cancellation of use of all space in the building. . .
“3. Acceptance of the notice of default and demand for payment dated August 31, 2005 from Scarp Property Associates, LLC” (id.).
In opposition to plaintiffs order to show cause, defendants asserted that Overhoff lacked the authority to bring an action on behalf of the LLC, and that Overhoff s employment and management rights with the LLC had been terminated prior to the commencement of the proceeding, by the written consent which purported to terminate all of the employees (see Baron affidavit, sworn to on Sept. 21, 2005, 1Í1Í 2, 6, exhibit [Statement of Majority Consent In Lieu of Special Meeting]). Further, defendants Taylor and Baron did not consent to plaintiff’s counsel representing the LLC (see Taylor affidavit 1I1Í 4-6, exhibit A).
In a second affidavit, Overhoff asserted that neither the members, the directors nor the officers of the LLC had ever held a proper meeting at which his status had been changed *354 (Overhoff second affidavit 114). Thus, he asserted, there was no legal or factual basis for defendants’ claim that his employment as president or general manager had been terminated {id. 11 7).
The court executed the order to show cause on September 19, 2005, without temporary relief, and a return date was set down for September 23, 2005. After argument, the court denied the request for a temporary restraining order, noting that there was no written lease for the premises (transcript, Sept. 23, 2005, at 25). The court further noted that Overhoff had no employment agreement {id.). The court stated:
“I don’t think the . . . majority interests in the LLC . . . have exercised their duties legally at this point, but it appears that a majority of them are going to soon exercise them against Mr. Overhoff. And given what their attorneys have represented to me today, [plaintiffs] haven’t shown a likelihood of success on the merits . . .
“There’s going to be a real question, after they take their actions correctly, as to standing with US Micro, whether or not you can sue US Micro as a Petitioner
“And I would advise you that at this point, that until there is a meeting ... on notice of all the . . . owners of the LLC, and they ma[k]e a determination in the correct fashion, complying with the law, as to what the future of the LLC is going to be, then no one should be holding themselves out to be the owner or the representative of the LLC.” (Transcript, Sept. 23, 2005, at 25-28.)
Thereafter, on September 23, 2005, a special meeting of members was noticed, to be held on October 6, 2005 (see William Taylor reply affidavit, exhibit B). [3] The notice stated that the purpose of the meeting was to ratify actions previously taken on August 31, 2005 by written consent of the majority, including terminating Overhoff from his employment with the LLC {id.).[4] Overhoff received the notice but did not attend the meet *355 ing (id. exhibit C).[5] The remaining two members, who did attend, purported to ratify the termination of Overhoff from his employment, ratify the termination of the purported lease of the premises and the surrender of the space, and ratify acceptance of the notice of default and demand relative to the note (see id.).
Meanwhile, defendants brought an order to show cause, executed by the court on September 27, 2005, with a temporary order restraining Overhoff from taking any action on behalf of the LLC, including contacting customers or vendors, holding himself out as representing the LLC, copying or using any of the LLC’s documents, checks or checkbooks, or using his company-owned cell phone or keys. In an affidavit, defendant Baron averred that on September 20, 2005 Overhoff had sent a letter to Baron, Taylor and Kenneth Brown (another employee of the LLC), informing them that their employment with the LLC was terminated (see Baron affidavit, sworn to on Sept. 26, 2005, 1Í 4). Further, Overhoff had submitted an address change for the LLC to the United States Postal Service, changing its address to his home address (id. 1Í1Í 5-6). Finally, Baron asserted that Overhoff had taken the checkbook for the LLC and other documents, including customer and vender contacts, all open purchase orders, and all quotes (id. 1HI 8-9).
In an answering affidavit (Overhoff third affidavit), Overhoff averred that Taylor and Baron had illegally attempted to terminate him from his positions as CEO, president and general manager on September 20, 2005, even though the operating agreement purportedly barred his termination without a legally constituted meeting (see Overhoff third affidavit 1iU 20, 41-45, exhibit B). Such a meeting, he asserted, required as a quorum all three members (id. 1Í1Í 9, 45-46, citing operating agreement §§ 4.4-4.S).
Attempting to “protect US Micro and its assets,” Overhoff took the following actions on or about September 16, 2005: moving the LLC offices to his residence in Golden, New York; changing the address on the LLC letterhead and at the post office; wiring funds to certain of the LLC’s suppliers in China; preparing to move the physical assets to new office space, along with the business records of the LLC; and “attempting] to carry on the business” of the LLC (Overhoff third affidavit H 36).
*356 In a reply affidavit, William Taylor, Richard Taylor’s son, asserted that he held a proxy for his father with respect to his 42% membership interest in the LLC (William Taylor affidavit H 1). William Taylor asserted that, under Limited Liability Company Law § 407, unless expressly prohibited by the operating agreement, members may take action without a meeting if the holders of at least a majority of the membership interests consent in writing. William Taylor contended that, on September 16, 2005, the actions taken by written consent were authorized (id. MI 11-12).
At the return date of defendants’ order to show cause, October 12, 2005, defendants contended that Overhoff had violated the temporary restraining order (TRO) by a letter sent on October 6, 2005, to Taylor’s counsel. The letter was on LLC letterhead, and signed by Overhoff as president, CEO and general manager of the LLC. It stated in part:
‘T write to you as the existing President, CEO and General Manager of [the LLC].
“This is to inform you that you never have been retained as, and are not now, attorneys for our Company with respect to any matter whatsoever.
“It further appears that you have a gross and illegal conflict of interest in representing your client Richard Taylor and in helping him steal [the LLC] and its assets and business.
“We intend to hold your firm and each of you personally for your breach of professional ethics and abject conflict of interest as well as being co-actors with Richard Taylor in his illegal scheme to steal this Company.” (William Taylor affidavit, exhibit E)
After argument, the court admonished Overhoff to comply with the TRO in the future, ordered that the LLC be stricken from the action as a plaintiff, along with all claims asserted on its behalf (without prejudice), and that the caption be amended accordingly. Overhoff was further ordered to serve an amended summons and complaint (allegedly, no complaint had yet been served, although a complaint was filed on September 19, 2005). The TRO was continued. The court reserved decision on the issue whether the operating agreement prevented defendants from taking action without a meeting upon consent of the majority of membership interests. A briefing schedule was established: defendants were requested to submit a letter brief by October 19; Overhoff was given until October 28 to respond; and defendants were given until November 3, 2005 to reply.
*357 Defendants brought a second order to show cause concerning two checks made out to the LLC that had been endorsed by Overhoff, and made payable to his counsel, in the amount of $8,301.75. Overhoff submitted an affidavit in response, and, on or about November 2, 2005, a so-called corrected affidavit with exhibits.[6] The court ordered that sum of money placed in an escrow account by attorney Weiss, and also ordered Overhoff to itemize and return certain LLC property (order, dated Nov. 4, 2005).
The court notes that the parties submitted additional papers, not solicited by the court, prior to the November 3 deadline. Defendants submitted a supplemental affirmation of counsel, in which counsel informed the court that, on October 18, Taylor and Baron held a meeting at which they expelled Overhoff as a member, pursuant to section 9.3 of the operating agreement (Kerman supplemental affirmation 1Í1Í 2-3).[7] Thereafter, Baron and Taylor held a second meeting, at which they ratified certain acts that they had taken by written consent a month earlier, and also terminated the employment and all of the positions held by Overhoff in the LLC (see id. exhibit B). Counsel asserted in his affirmation that it was unnecessary for the court to determine the instant issues.
In response, Overhoff submitted a so-called “Statement re Defendants’ Action in Expelling Plaintiff as a Member of US Micro” (dated Oct. 28, 2005), which provides, inter alia, that “[p]laintiff will accept Defendants’ expulsion of him, without prejudice, subject to the provisions of [section] 9.3 of the Operating Agreement.”
Discussion
The court disagrees with defendants’ assertion that the court need not decide the present dispute because Overhoff has been expelled as a member of the LLC. Initially, that information is outside of the record on the issues taken under advisement, and cannot properly be considered by the court. Secondly, it is not clear to the court whether Overhoff s rights, if any, due to his termination/expulsion would differ depending upon whether he *358 was properly terminated in September by written consent or in October by expulsion, and the parties have not, obviously, briefed the matter. For those reasons, among others, rather than following the moving target of the parties’ actions toward one another, the court will decide the dispute properly before it.
Overhoff contends that Limited Liability Company Law § 407 (a), which permits action by written consent of the majority of members under certain circumstances, is inapplicable to this particular LLC because its operating agreement requires a quorum of all members to be present at any meeting at which action is taken (see operating agreement §§ 4.4, 4.5). Thus, he contends that the operating agreement does not permit action absent a meeting at which there is a quorum, or unanimous written consent. For example, he asserts, section 4.5 of the operating agreement, entitled “Action by Vote of the Members,” provides that “no action may be taken or voted upon, unless all Members, in person or represented by proxy, are present to vote upon same” (emphasis supplied).[8] Overhoff interprets this to mean that no action may be taken by written consent unless 100% of the members agree because, under section 4.4, a quorum constitutes 100% of all members.
Defendants, on the other hand, assert that Limited Liability Company Law § 407 (a) permits the members to act by written consent, without holding a meeting — unless the operating agreement precludes them from doing so, and, they assert, this operating agreement does not. The written consent relied upon is the “Statement of Majority Consent In Lieu of Special Meeting of Members” of the LLC, executed by Baron and Taylor’s proxy on September 16, 2005.
The court agrees in part with defendants’ interpretation of the applicability of Limited Liability Company Law § 407 (a). Considering Limited Liability Company Law § 407 (a) together with the instant operating agreement, the court rules that the operating agreement does not bar action by written consent of less than 100% of the members under all circumstances. Rather, the 100% quorum requirement in section 4.4 of the operating agreement applies only to meetings. To rule otherwise would permit a minority member to stonewall any action by the *359 members merely by refusing to attend meetings, as happened here. However, the court also rules that defendants Baron and Taylor, representing a majority in interest, took certain actions by written consent for which the operating agreement requires the approval of all members (see operating agreement § 5.5). The court first discusses the statutory law and the various relevant provisions of the operating agreement, and then details the results that must follow.
The Limited Liability Company Law The Limited Liability Company Law was adopted by the New York Legislature in 1994. There is little case law interpreting many of its provisions. What is clear is that the statute provided default procedures for LLCs, which will apply to LLC proceedings unless the operating agreement of the particular LLC clearly provides otherwise (see generally Matter of Spires v Lighthouse Solutions, LLC, 4 Misc 3d 428, 436 [Sup Ct, Monroe County 2004]).
The pertinent portion of Limited Liability Company Law § 407 tracks the language of Business Corporation Law § 615 (a), but omits the requirement of unanimity for shareholder written consents. Business Corporation Law § 615 (a) allows action to be taken by less than unanimous shareholder written consent only if the certificate of incorporation specifically permits it. That statute currently provides in pertinent part:
“(a) Whenever under this chapter shareholders are required or permitted to take any action by vote, such action may be taken without a meeting on written consent, setting forth the action so taken, signed by the holders of all outstanding shares entitled to vote thereon or, if the certificate of incorporation so permits, signed by the holders of outstanding shares having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted. In addition, this paragraph shall not be construed to alter or modify the provisions of any section or any provision in a certificate of incorporation not inconsistent with this chapter under which the written consent of the holders of less than all outstanding shares is sufficient for corporate action.” (Business Corporation Law § 615 [a] [emphasis supplied].)
Until 1997, Business Corporation Law § 615 (a) required the *360 holders of all outstanding shares entitled to vote to sign written consents in order for action to be taken without a meeting (see Business Corporation Law § 615 [former (a)] [amended 1997]). The 1997 amendment permitted a less than unanimous written consent to be effective to take action “if the certificate of incorporation so permits.”
The Limited Liability Company Law, in contrast, as promulgated, omitted any requirement that holders of all membership interests entitled to vote sign such written consents, “except as provided in the operating agreement” (Limited Liability Company Law § 407 [a]). Section 407 (a) provides:
“(a) Whenever under this chapter members of a limited liability company are required or permitted to take any action by vote, except as provided in the operating agreement, such action may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken shall be signed by the members who hold the voting interests having [sic] not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all of the members entitled to vote therein were present and voted and shall be delivered to the office of the limited liability company” (Limited Liability Company Law § 407 [a] [emphasis supplied]).
Thus, the Limited Liability Company Law permits “[m] embers of a limited liability corporation [to] provide written consent in order to take action in lieu of an actual vote, unless the operating agreement provides otherwise” (Madison Hudson Assoc., LLC v Neumann, 8 Misc 3d 1025[A], 2005 NY Slip Op 51289[U], *6 [Sup Ct, NY County 2005]).
The operating agreement for the LLC provides, in section 4.5:
“Action by Vote of the Members. Every Member entitled to vote at any meeting shall be entitled to one vote, irrespective of his Membership Interest. Any Company action shall be authorized by a majority of the votes cast by the Members entitled to vote thereon, except as may otherwise be provided by státute, the Articles of Organization or this Agreement. However, no action may be taken or voted upon, unless all Members, in person or represented by proxy, are present to vote upon same.” (Operating agreement § 4.5 [emphasis added].)
*361 As noted, section 4.4 provides inter alia: “Quorum Needed for Meetings. The presence of all Members, in person or represented by proxy, shall be requisite and shall constitute a quorum at all meetings of Members except as otherwise provided by statute or the Articles of Organization.” (Operating agreement § 4.4.) There are various rules for adjourning a meeting that does not have a quorum, until a quorum shall be present or represented (id.). Thus, for action to be taken at a meeting, all members must be present in person or by proxy. Defendants insist that those requirements apply only to meetings, and that the operating agreement is silent concerning the validity of action taken by written consent.
The language in Limited Liability Company Law § 407 (a) is complex and difficult to parse. The court notes that, throughout the Limited Liability Company Law, member voting rights are governed by the percentage interest owned by those voting that interest, rather than on a pro rata basis, absent other provisions in the operating agreement.[9] Thus, “voting interests having [sic] not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all of the members entitled to vote therein were present and voted” means that if there is a majority voting requirement, as here, those holding more than 50% of the membership interests — the minimum number necessary to take such action at a meeting at which all eligible members were present and voted — must sign the written consent. That has happened here. The fact that the quorum required for action at a meeting is 100% is precisely that alternative — a meeting at which all eligible members (100%) are present and vote — but neither at such a meeting, nor by written consent, is there a requirement of unanimity of consent on all issues, under the operating agreement as read in light of the statute.
Whether, as a policy matter, the taking of important action should be permitted on written consent of a mere majority is a different issue. A commentator on the Limited Liability Company Law notes the Delaware General Corporation Law (Del Code Ann, tit 8, § 228) has “authorized non-unanimous written stockholder consents for some time, . . . and they raise troublesome questions, especially in takeover situations” (Walker, New York Limited Liability Companies and Partnerships: A Guide to Law and Practice § 6:11, at 6 [1 West’s NY Prac Series 2002]).
*362 In any event, the operating agreement here contains certain safeguards against oppression of minorities, in the form of section 5.5.[10] That section provides in pertinent part:
“Actions Requiring Approval of All Members. Notwithstanding the foregoing, the Members may not make any of the following management decisions without obtaining the consent of all of the Members:
“(a) To acquire, sell, assign or otherwise transfer any interest in any property, . . .
“(f) To confess any judgment on behalf of the Company,
“(g) To do any act which makes it impossible to carry on the ordinary business of the Company” (operating agreement § 5.5 [a], [f], [g] [emphasis supplied]).
The actions purportedly taken here by written consent fall squarely within the provisions of section 5.5, specifically the transfer of any interest in property, i.e., the giving up of a leasehold (see operating agreement § 5.5 [a]); the approval of the calling of the term note by Scarp, which was akin to a confession of judgment and made it impossible to carry on the ordinary business of the LLC (see operating agreement § 5.5 [f], [g]); and, the termination of all employees, which also made it impossible for the LLC to carry on its ordinary business (see operating agreement § 5.5 [g]). Thus, none of the actions purportedly taken by written consent in September were approved by consent of all of the members or complied with section 5.5 of the operating agreement. Therefore, the actions were null, void and of no effect.
Letters to the Court; Status of the LLC
Any papers, letters and/or pleadings of any stripe sent to the court after defendants’ final submission on November 3, 2005, are not a part of the record on the instant matter and have not been considered by the court in its decision. Actions taken since November 3, 2005 that may have affected the status quo as of that date have been taken at the parties’ risk.
The court notes specifically what it has not decided.
First, the court has not decided whether defendants Baron and Taylor could properly by written consent have terminated *363 Overhoff from his positions as CEO, president and general manager. Rather, the court is ruling only that defendants Baron and Taylor were barred by section 5.5 of the operating agreement from terminating ¿1 of the LLC’s employees simultaneously through action by written consent, because section 5.5. required a unanimous agreement of members for such an action (see operating agreement § 5.5 [g]).
Overhoff stated in an affidavit that Taylor and Baron had illegally attempted to terminate him from his positions as CEO, president and general manager despite the fact that the operating agreement purportedly barred his termination without a legally constituted meeting (see Overhoff third affidavit 1Í1I 20, 41-45). Under the agreement, however, although “all management decisions shall be determined by the vote of the Members in accordance with Section 4.5” (operating agreement § 5.1), the members may remove officers at their discretion by majority vote. The operating agreement provides:
“5.2 Appointment of Officers. The Members may appoint such other officers and assistant officers as they may from time to time deem necessary or appropriate for the management of the Company . . . Each officer of the Company shall hold office at the pleasure of the Members until his successor has been appointed and qualified or until his earlier death, resignation or removal . . . The Members shall be empowered to fill all vacancies in office and to remove officers at any time with or without cause.” (Operating agreement § 5.2 [emphasis supplied].)
Thus, had Taylor and Baron simply removed Overhoff from his employment by written consent — rather than terminating all of the employees of the LLC at the same time — that presumably would have been legal under the Limited Liability Company Law and the operating agreement. There is no proof, however, that that was done. The action taken by written consent was the termination of all employees — an action which certainly made it impossible for the LLC to carry on its business, and therefore, as the court has ruled, an action requiring consent of all members under operating agreement § 5.5.
Second, the court expresses no opinion whether it was proper for defendants to bar Overhoff from the premises after September 16, 2005.
Third, the instant ruling does not sanction Overhoff s actions in attempting to move the LLC to his home, changing the business address, and removing the checks and other LLC documents from the premises.
*364 Fourth, the court expresses no opinion about the purported expulsion of Overhoff as a member or his purported acceptance of that expulsion “without prejudice.”
Fifth, the court does not decide whether the minutes of the special meeting of October 6 are sufficient to constitute the action of terminating Overhoff s employment by written consent (see William Taylor affidavit, exhibit C). This issue was. not briefed by the parties.
Finally, as noted earlier, the parties acted at their own risk in taking any actions relative to their status in the LLC after the court had taken the instant matters under advisement.

. Defendants assert that defendant Scarp was incorrectly sued, and that its proper appellation is Scarp Property Associates, LLC (Taylor affidavit in opposition to plaintiffs order to show cause [hereinafter Taylor affidavit] H 9). Scarp is a limited liability company controlled by defendant Richard Taylor (id.).

. Taylor and Baron had, allegedly as of August 31, 2005, signed an agreement with Scarp on behalf of the LLC, surrendering the leased premises (see Taylor affidavit, exhibit B).

. Defendants contended that they had noticed the special meeting merely in deference to the court, while believing that no meeting was necessary because the required actions could be taken by consent of the majority (see Limited Liability Company Law § 407 [a]).

. Note that the written consent was executed on September 16, 2005, not August 31, 2005, and that it purported to terminate all of the employees of the LLC, not just Overhoff (see Taylor affidavit, exhibit C).

. Plaintiffs counsel asserts that “[a]voiding a quorum is a practice honored by time and practice” (Weiss letter brief, dated Oct. 28, 2005, at 6).

. Attached to Overhoff s “corrected” affidavit is an unsolicited affirmation of attorney Weiss which has not been considered by the court because it was untimely and not in proper evidentiary form.

. Section 9.3 of the operating agreement provides that “[a] Member may be expelled from Membership . . . upon the unanimous vote of all of the other Members, entitled to vote thereon.”

. Article 4 of the operating agreement is entitled “Meeting of Members,” and thus all provisions within it presumably relate to meetings (see also operating agreement art 5 [entitled “Management”]; but see operating agreement § 13.11 [captions and headings shall not affect interpretation of operating agreement]).

. Here, under section 4.5 of the operating agreement, each member holding any interest has one vote.

. The court expresses strong concern that neither side directed the court’s attention to section 5.5 of the operating agreement, depriving the court of any briefing on sections of the operating agreement that, in the court’s view, are essential to the disposition of this matter.