■ In the Matter of JOHN LUTHER & SONS Co. et al., Appellants, v GENEVA BUILDERS AND TRADE ASSOCIATION, INC., Respondent.—Order unanimously affirmed, with costs. Memorandum: In this proceeding petitioners have unsuccessfully sought dissolution of respondent corporation under section 1102 (subd [a], par [2], cls [C], [D], [E]) of the Not-For-Profit Corporation Law, to wit, on the grounds of the existence of internal dissension (C), of looting and wasting of respondent's assets by its directors or members, perpetuating the corporation solely for their personal benefit and otherwise acting in an illegal and oppressive manner (D), and that respondent can no longer carry out its corporate purposes (E). Respondent's primary purpose is to serve as a bargaining agent for its members with respect to wages and terms of employment of members' employees in negotiations with unions operating within respondent's geographical area, to wit, Ontario County and environs. There was no evidence to support the claim that respondent can no longer carry out its corporate purposes (E) and the court properly dismissed the petition in respect of it. Under clause (D), the grounds for dissolution were essentially two, namely, looting and wasting corporate assets and acting illegally and oppressively. As to looting and wasting, the evidence is that respondent was organized over 25 years ago under the Membership Corporation Law, and for years its only income was from dues of members. Its offices were maintained in the City of Geneva in a building owned by one of its principal members, N. Coblio & Sons, Inc. (Coblio), whose president is also president of respondent and whose secretary is secretary and treasurer of respondent. In 1971 respondent admitted the petitioner nonresident members, with no voting rights. At about that time respondent created an income-producing plan called the Industry Advancement Fund (IAF), presumably at the suggestion of the unions. Under this plan respondent's new contracts with the operating unions provided that five cents per hour for each hour worked by union employees of respondent's members in the area would be paid by the employers to the IAF. In practice, nonmember employers in the area accepted such union contract provisions in employing labor in the area, and also paid five cents per hour for their employees to IAF. With the IAF income respondent was able to pay its own way and began to pay rent and for other services. It currently pays to Coblio $75 per month rent and to Coblio's secretary the sum of $40 per week (plus $270 annually for her medical insurance) for her services as its secretary-treasurer, while she also is paid $70 per week by Coblio for her services to it; and the directors pay themselves $50 for each corporate meeting which they attend. Some of petitioners' witnesses acknowledged that they saw no impropriety in the above expenditures; but even if it could be found that some of the expenditures were excessive, no bad faith is shown, and a remedy far short of dissolution of the corporation on such ground would be in order. With respect to the alleged "illegal and oppressive" operation of the corporation under clause (D), petitioners complain of the manner in which respondent's officers conduct its affairs, often without notice to nonresident members, without regular corporate meeting dates, and denying voting rights to nonresident members and excluding them from other privileges of resident member status despite the fact that nonresident members are now contributing over 95% of respondent's income under IAF.

738

This is the nub of the case. The alleged "internal dissension" between members, clause (C), also rests on this evidence that nonresident members are dissatisfied with the operation of the corporation. However, accepting petitioners' evidence of oppressive conduct by active members as true, petitioners have wholly failed to show that judicial dissolution would be beneficial to the members of the corporation as required by section 1109 (subd [b], par [2]) of the Not-For-Profit Corporation Law. It should be borne in mind that although petitioners are now paying most of respondent's income through the IAF, they are also receiving substantial benefits. Under the bargaining contracts made by respondent with the area unions, uniform labor terms have been achieved, and the existence of these contracts facilitates the estimation of contract costs. No strike has occurred in the area since 1964. The system has worked well, and the union wages negotiated have been lower than those in the Rochester area. Indeed, it is reasonable to assume that respondent, operating in a rural area, is able to secure better union contract terms than could petitioners, operating from large metropolitan centers. Petitioners' witnesses could not pinpoint any objection to these contracts. The lack of grievance on that score lends credence to respondent's contention that petitioners seek control of respondent or its dissolution for ulterior purposes. Respondent has no legal monopoly on its representation of employers; and petitioners are free to compete for such representation or to locate their respective offices in respondent's geographical area and thus qualify to become resident voting members of respondent. Resident contractors-employers in the Ontario County area should be able to continue to operate this local building and trade association because they have successfully maintained stable labor relations in the construction industry in the past and because they have a permanent interest in continuing sound labor relations in this area in the future. Nonresident members cannot be presumed to have more, if as much, interest in or influence upon the stability of such labor market. Finally, dissolution is a drastic remedy. "There is no absolute right to dissolution" of a corporation, for that determination lies in the discretion of the court *(Matter of Radom & Neidorff,* 307 NY 1, 7). In the absence of a clear abuse of discretion by trial term, we should not disturb its ruling. The evidence supports trial term's conclusion that petitioners have failed to establish their case under clauses (C) and (D) of the statute. The order is, therefore, affirmed without prejudice to petitioners seeking redress of alleged grievances through other available proceedings, if so advised. (Appeal from order of Monroe Supreme Court dismissing petition.) Present—Moule, J. P., Mahoney, Dillon, Goldman and Witmer, JJ.