OPINION OF THE COURT
Kenneth R. Fisher, J.
*403 This is a petition by Horning for a judgment to dissolve Horning Construction, LLC. Horning Construction, LLC is a limited liability company (LLC) organized under the laws of New York in December 2001. There is no operating agreement.
According to petitioner, he formed the business originally as Horning Construction Company, Inc. (Horning, Inc.) in July 1984. It was, and is, a commercial construction company. He asserts that it has grown to become a major construction company in Monroe County. Petitioner lists a number of large and prestigious projects undertaken by the corporation and the LLC over the years. Petitioner asserts that, by 2001, the corporation had between 10 and 15 million dollars in annual sales. However, petitioner states, by December 2001, he felt he had to take on partners in order to lessen his crushing workload. Therefore, he offered two of his employees, respondents Klimowski and Holds-worth, an interest in a new company, Horning Construction, LLC.
Petitioner details the arrangement offered to each respondent, which was basically that they would take over some of the day-to-day responsibilities of the business in return for a one-third interest each in the LLC. There never has been an operating agreement. However, petitioner states that all business was transitioned from Horning, Inc. to Horning Construction, LLC, presumably at his direction. In order to procure surety bonds, petitioner had to pledge $1.1 million of Horning, Inc. According to petitioner, respondents refused to have Horning Construction, LLC pledge a bond to support the surety.
Petitioner contends that respondents never assumed their anticipated duties to relieve petitioner of his workload, but they did realize substantial financial gain because petitioner nevertheless treated them as partners. Because the parties could not agree on an operating agreement, by 2005, petitioner offered to sell the LLC to respondents. Petitioner maintains that the offer was a fair one and that independent business advisors have so opined. On the other hand, respondents assert that the agreement is not fair in that it gives too much to petitioner. Alternative proposals were exchanged, but the parties cannot agree on a resolution.
Petitioner contends further that, as a result of the inability to agree on a sales proposal, the relationship between the three of them has deteriorated to the point that they cannot work together. He asserts that the animosity is “palpable.” Petitioner maintains that this status has reached a critical stage because *404 they cannot put together competitive bids on projects because of this strain. Petitioner attaches a letter from Klimowski, which contains profanity, to demonstrate the level of animosity which exists between the parties. Petitioner also submitted an affidavit under separate cover which details the disagreements the parties had about what should have been discussed and handled at the annual meeting which was scheduled to take place in January 2006. He concludes that the LLC must be dissolved pursuant to section 702 of the Limited Liability Company Law. He further asserts that, because of the disagreement over the assets of the LLC, the court should appoint a temporary receiver to handle the affairs of the LLC while it is in the process of dissolving.
Respondents’ Position
Respondents oppose the petition and ask that petitioner be enjoined from engaging in activities inimical to the LLC’s interests, which respondents characterize as a breach of fiduciary duties to the LLC.
Klimowski stated that he worked for Horning, Inc. since 1989. In early 2001, he was approached by petitioner to gauge his interest in forming a LLC with his own ownership interest. According to Klimowski, petitioner did this because Klimowski was the only person at Horning who could manage projects in excess of $5,000,000. Klimowski agreed to join. Holdsworth states that he came from a separate company and would only consider joining the LLC if he was a part owner. He also asserts that Horning, Inc. could not bid for larger projects which is another reason why the LLC was formed. Holdsworth became a surety. A fourth person, Sharp, declined to join the LLC. Holdsworth asserts that there was no condition that, if the LLC was formed, he would assume “administrative duties.” The LLC was formed in December 2001, with each member getting a one-third ownership interest. Respondents state that the LLC began doing business in March 2002, and since then has maintained steady progress with revenues capping out at approximately $25 million in 2005. Respondents contend that they accounted for the generation of between 73% and 80% of the LLC’s gross profits in 2004 and 2005, respectively.
Respondents point out that the LLC continues to employ more than 40 people, that it meets all of its financial obligations, and that it is fully solvent. Respondents contend that there is no reason to believe that the LLC can no longer function. Klimowski admits that he demonstrated “pique” in his recent let *405 ter to petitioner, but it was based upon frustration engendered by petitioner’s constant condescending behavior toward him. He asserts that petitioner fails to acknowledge that he is a one-third owner instead of a mere employee. Respondents maintain that petitioner is not “frozen out” of the business, that petitioner continues to receive his $120,000 yearly salary, which is greater than the salary of respondents, that the company is not deadlocked, that it is simply run by a majority rule, and that, under the circumstances, it is unnecessary and unjust to dissolve the LLC which would place in jeopardy the livelihood of the more than 40 employees. There is no impediment to the LLC’s continuation because all bids only require the approval of two of the members.
Holdsworth states that petitioner has not generated much business of late and has been allowed to take more vacation than other members. Holdsworth acknowledges petitioner’s stated wish to retire coupled with petitioner’s offer of a buyout under which the LLC would pay him $358,000 for 12 years with 2[1]/2% yearly escalators. According to Holdsworth, petitioner indicated that he would shut down the business unless the other two agreed to the deal. Negotiations continued throughout 2005. Holdsworth maintains that respondents made petitioner a reasonable offer based upon his one-third interest in the business and that it is disingenuous for petitioner to say otherwise.
Holdsworth acknowledges that petitioner is being disruptive to the business of the LLC by approaching certain employees and asking them to perform to the detriment of the LLC while promising them jobs with Horning, Inc. upon the demise of the LLC. Respondents contend that these actions are a violation of petitioner’s fiduciary duties to the LLC and that the court should enjoin petitioner from engaging in these and similar actions in violation of his current fiduciary duties to the LLC.
Respondents also filed an affidavit of Fagan, the contract administrator for the LLC. She asserts that she was approached by petitioner in December 2005, who stated that he had made a big mistake in offering respondents an ownership interest in the LLC. According to Fagan, petitioner told her that he had funding and personnel to transfer the business of the LLC back to Horning, Inc., and that she would have a job waiting for her after the dissolution of the LLC. She states that she typed several letters on her home computer, on Horning, Inc. letterhead, intended to be mailed to LLC employees, in which petitioner detailed the problems with the LLC and his plans to restart *406 Horning, Inc. Ultimately, she resigned from the LLC and decided not to work for Horning, Inc. Fagan says she was asked by petitioner to delete the letters and records he had asked her to put together, but she did not do so and instead advised the respondents.
Respondents also filed an affidavit of Bowers, the superintendent of the LLC. He asserts that petitioner falsely advised him on February 6, 2006, that the respondents had taken action to dissolve the LLC when it was petitioner who had initiated the proceeding. Bowers further asserts that petitioner told him that he could freeze the LLC’s assets while the dissolution was taking place. This, according to petitioner, would allow him to starve the respondents out while he used the LLC’s assets to restart Horning, Inc. Bowers advised respondents of this, and refused to join Horning, Inc.
Finally, respondents submit the affidavit of Brei, who had a lunch meeting with petitioner on February 6, 2006, in which petitioner told him that he was prepared to freeze respondents out for a year or more, and that would allow him to tie up the LLC’s assets while he could swoop in and take over projects for the benefit of Horning, Inc. Brei states that he was offered a job with Horning, Inc., but that he turned it down.
Petitioner’s Reply
In its reply affidavit, petitioner relies mainly on the failure of the members since inception in December 2001 to agree on an operating agreement defining the job duties of each. Petitioner contends that “the parties bickered over every petty detail and could reach no consensus” when negotiating an operating agreement. On the other hand, petitioner acknowledges that Horning, Inc. “had operated for more than 18 years [and] . . . did an excess of $14 million in business the year before I approached Holdsworth and Klimowski.” Petitioner also acknowledges that the LLC grew, and that it “grossed $25 million in 2005.” Petitioner states further: “It was my intention to turn over substantial ownership of my company upon terms that would permit me to scale back my work load and earn a substantial payout for the interest in my business that I was conveying to Klimowski and Holdsworth.” Petitioner contends that the respondents gave no consideration for their one-third interest each in the LLC and that dissolution should be granted on that ground alone. Although petitioner stresses that “parties . . . unable to agree on their fundamental terms of operation . . . [cannot] fairly and sensibly operate without them,” he maintains *407 that he “generally handle [s] the administrative work in the office and Klimowski and Holdsworth continue to do their jobs in the field.”
Petitioner takes issue with other aspects of respondents’ affidavits, but the only real allegation that the business of the LLC is failing comes from his contention that it “continues either to fail to bid or not to bid well on projects that we normally would bid on and [oftentimes] win.” Petitioner adds that the LLC has “two senior level job superintendents without work (one of whom is out of work for the first time in his 10 years with the company) and operations are at risk of slowing further.” The concern about bidding was included in the initial papers filed with the petition, but in neither petitioner’s reply nor in these original papers are any examples given. Furthermore, they fly in the face of the substantial growth of the company from the time of its inception in 2001. At bottom, petitioner requests dissolution on the ground that Klimowski despises him, Holdsworth resents him, neither of them trust petitioner, and “that it is Klimowski’s and Holdsworth’s intention to defeat an involuntary dissolution and make my remaining time with Horning, LLC so unbearable that I will relent and give them for a pittance the remainder of the company for which they have paid nothing to date.”
Analysis
Petitioner has asked for an order directing dissolution of the LLC pursuant to Limited Liability Company Law §§ 702, 703, and 704. Section 702 allows for a judicial decree of dissolution, “whenever it is not reasonably practicable to carry on the business in conformity with the articles of organization or operating agreement.” (See Schindler v Niche Media Holdings, 1 Misc 3d 713 [Sup Ct, NY County 2003]; Matter of Spires v Lighthouse Solutions, LLC, 4 Misc 3d 428 [Sup Ct, Monroe County 2004].) Further, pursuant to Limited Liability Company Law § 703, the court may appoint a receiver or “liquidating trustee” to wind up the LLC’s affairs. Section 704 mandates that, in the event of dissolution, a dissolution order be issued under which the assets shall be distributed, beginning with all creditors.
Under petitioner’s view, Spires stands for the proposition that, whenever presented with a member’s “expressed desire to sever his relationship with . . . [the] LLC,” due to “untenable circumstances” (petitioner’s mem at 4), Limited Liability Company Law § 606 (a) requires dissolution if there is no operating agreement. (Spires, 4 Misc 3d at 437.) Spires, however, *408 does not stand for that proposition nor could it in the face of section 701 (b). Indeed, the Limited Liability Company Law was designed to protect members from such disruptions and expressly avoids such a result. While section 606 (a) requires dissolution and winding up upon withdrawal of a member, withdrawal is not available just for the asking, especially if there is no operating agreement. Instead, section 701 (b) insists that the
“death, retirement, resignation, expulsion, bankruptcy or dissolution of any member or the occurrence of any other event that terminates the continued membership of any member shall not cause the limited liability company to be dissolved or its affairs to be wound up, and upon the occurrence of any such event, the limited liability company shall be continued without dissolution” (Limited Liability Company Law § 701 [b] [emphasis supplied]) except in the event of a majority vote (not applicable here).
Thus, instead of triggering dissolution upon announced intention to withdraw, the Limited Liability Company Law provides for just the opposite. Dissolution in the absence of an operating agreement can only be had upon satisfaction of the standard of section 702, i.e., “whenever it is not reasonably practicable to carry on the business.” (Schindler, 1 Misc 3d at 716-717.)[1]
Given this statutory standard, the very real dilemma faced by petitioner, foreseen in the excellent article by Peter A. Mahler, When Limited Liability Companies Seek Judicial Dissolution, Will the Statute Be Up to the Task? (74 NY St BJ 8 [June 2002]), readily can be seen. As Mahler ably explains, dissolution under the Limited Liability Company Law is not as easy as distribution under the Business Corporation Law. With the 1999 amendments (L 1999, ch 420), the previous default dissolution rules under section 701, which required dissolution upon the withdrawal of a member unless the remaining members voted to continue, “was eliminated” in favor of the provision quoted above. (74 NY St BJ at 10 [text following n 18].) The 1999 *409 amendments, with respect to section 606 (a) and section 701, “jettisoned the partnership model in favor of the corporate model, but left LLCL § 702 untouched.” (Id.) Because of the “relative ease of exit under partnership law” (id.), section 702 was not problematic before 1999. But when the more rigorous requirements of the current section 701 were enacted, eliminating dissolution rights upon a member’s withdrawal in favor of the solitary section 702 “not reasonably practicable to carry on business” standard, LLC members such as petitioner were, and are, left at the mercy of other members’ conduct which does not in the circumstances create the statutory standard for judicial dissolution in section 702, particularly in view of the fact that there is no buy-out provision in the Limited Liability Company Law similar to that in the Business Corporation Law and other like statutes.
Retention of section 702 in unaltered form (i.e., originally designed for compatibility with the very flexible pre-1999 partnership default dissolution rules, but now applied to the more restrictive corporate model default dissolution rules) appears not to have been an oversight. Section 702, according to Mahler, “closely tracks the language in § 902 of the ABA Prototype LLC Act,” which contains commentary “suggesting] a deliberate avoidance of the typical grounds for dissolution found in corporate dissolution statutes, on the ground that ‘disgruntled members’ of an LLC ‘would be encouraged to make this sort of allegation in limited liability company breakups.’ ” (Id. [quoting ABA Prototype LLC Act § 902, Commentary at 64].) Mahler predicted that the tension between amended section 606 and section 701, on the one hand, and unaltered section 702, on the other hand, would create litigation in a case like this:
“The most likely candidates are post-amendment LLCs without operating agreements and therefore governed by the LLCL’s new default rules. A member of such an LLC has no right to withdraw and no right to receive fair value for his or her interest. An action for judicial dissolution may be the only way out.” (Id. at 13.)
The language of section 702 has been authoritatively held to be “plain and unambiguous,” providing for a “strict” standard, “reflecting legislative deference to the parties’ contractual agreement to form and operate a limited liability company.” (Dunbar Group, LLC v Tignor, 267 Va 361, 367, 593 SE2d 216, *410 219 [2004] [“Only when a . . . court concludes that present circumstances show that it is not reasonably practicable to carry on the company’s business in accord with its articles of organization and any operating agreement, may the court order a dissolution of the company”].) Even more troubling to petitioner is the rule that, even if the statutory standard is met, i.e., “that there are no facts under which the LLC could carry on business in conformity with the [articles of organization], the remedy of dissolution . . . remains discretionary.” (Haley v Talcott, 864 A2d 86, 93 [Del Ch 2004] [interpreting Del Code Ann, tit 6, § 18-802].) Although “the presence of a reasonable exit mechanism [in an operating agreement] bears on the propriety of ordering dissolution under 6 Del. C. § 18-802” (id. at 96), and the same would be true under Limited Liability Company Law § 702, the absence of an agreement here leaves the court with no choice but to apply the strict Limited Liability Company Law § 702 standard.
The foregoing analysis was echoed in a comprehensive survey, Douglas K. Moll, Minority Oppression & The Limited Liability Company: Learning (Or Not) From Close Corporation History (40 Wake Forest L Rev 883, 925-940 [2005]), which shows beyond peradventure that the limitations imposed by the new default withdrawal and dissolution provisions enacted after promulgation in late 1996 of the IRS “check the box” regulations (Treas Reg [26 CFR] §§ 301.7701-1 to 301.7701-3), were intentional and designed for estate and gift tax purposes “[t]o minimize the tax value of an ownership interest” in an LLC “to reflect (1) that the interest is difficult to liquidate, and (2) that purchasers will generally pay less for illiquid positions.” (40 Wake Forest L Rev at 936 [collecting authorities at 937-939].) “While perhaps accomplishing an estate tax goal, the elimination of default withdrawal and dissolution rights leaves minority members vulnerable to oppressive majority actions since the minority can no longer easily exit the venture with the value of its investment.” (Id. at 939-940, citing 1 F. Hodge O’Neal & Robert B. Thompson, O’Neal’s Close Corporations: Law and Practice § 2:7, at 2-57 [3d ed 2002] [“What is overlooked or assumed away is that when harmony among the parties breaks down (as long experience with human nature suggests will happen) the new (withdrawal and dissolution) default rules facilitate a majority using its power to exclude the minority indefinitely from any return on the investment in the enterprise”].)
*411 Given the statutory standard for involuntary dissolution of an LLC without an operating agreement, petitioner fails to meet his burden to raise a material issue of fact warranting a trial under CPLR 410. Where the evidence does not demonstrate that it is not reasonably practicable to carry on the business in the circumstances (Limited Liability Company Law § 702), the court’s discretion, conferred by statute only,[2] is not invoked and the petition must be dismissed.
“Pursuant to CPLR 409 (b), in a special proceeding, where there are no triable issues of fact raised, the court must make a summary determination on the pleadings and papers submitted as if a motion for summary judgment were before it (see Matter of Friends World Coll, v Nicklin, 249 AD2d 393, 394 [1998]).” (Matter of Korotun v Laurel Place Homeowner’s Assn., 6 AD3d 710, 711-712 [2d Dept 2004].)
As well explained:
“Unlike a complaint in a plenary action, a petition in a special proceeding must be accompanied by competent evidence raising a material issue of fact (see, Matter of Jones v Marcy, 135 AD2d 887, 888; Matter of Garofano v State of New York, 122 AD2d 209). Therefore, the court in which the proceeding is initiated will apply summary judgment analysis and absent a factual issue requiring a trial (see, CPLR 410), will summarily dismiss the petition (see, CPLR 409 [b]; Matter of Conduit & Found. Corp. v Metropolitan Transp. Auth., 66 NY2d 144, 150; Matter of Port of N.Y. Auth. [62 Cortlandt St. Realty Co.], 18 NY2d 250, 255, cert denied sub nom. McInnes v Port of N.Y. Auth., 385 US 1006; Matter of Jones v Marcy, supra; Matter of Garofano v State of New York, supra; Matter of Lefkowitz v McMillen, 57 AD2d 979, lv denied 42 NY2d 807; State of New York v Bel Fior Hotel, 95 Misc 2d 901, 905; 3 Weinstein-Korn-Miller, NY Civ Prac 1t 409.03; Siegel, NY Prac § 556, at 914-915 [3d ed]).” (Matter of Trustco Bank, N.A. v Strong, 261 AD2d 25, 27-28 [3d Dept 1999].)
*412 “The provision for immediate trial of issues of fact raised within the context of a special proceeding (CPLR 410) does not obviate the general rule that the court’s determination is to be based upon the pleadings, papers and admissions submitted to the court (CPLR 409).” (Matter of Empire Mut. Ins. Co. [Greaney— National Union Fire Ins. Co. of Pittsburgh], 156 AD2d 154, 156 [1st Dept 1989].)
One certainly can sympathize with petitioner’s plight. In 2001, he had a thriving corporation and wished to reduce his work schedule. Whether for estate and gift tax reasons, or otherwise, he brought in two trusted men and gave them each one-third ownership of a new venture set up as a LLC. But he did this without prior or contemporaneous execution of an operating agreement giving him fair exit rights in the event of future disharmony. Moreover, during the next few years, despite having failed to secure an operating agreement to protect him, he transferred the business of his corporation to the LLC (something he did not have to do if he was dissatisfied with the parties’ arrangements), and the LLC grew substantially, even in relation to the corporation’s previous level of business. Despite petitioner’s stated frustration with the failure of the members to reach terms on an operating agreement, he was happy to keep doing business through the LLC until he unsuccessfully proposed a buyout to respondents in 2005, the company’s most successful year. Only then did he seek dissolution. The company continues to thrive in the ups and downs of the construction business.
Even in the corporate context, with the more liberal involuntary dissolution standards designed to protect minority interests, courts have rejected dissolution petitions in similar circumstances (or even worse scenarios from petitioner’s perspective). (Matter of Fazio Realty Corp., 10 AD3d 363, 365 [2d Dept 2004] [“While it cannot be disputed that there exists considerable and apparently ever-increasing internal corporate conflict, under the circumstances, the petitioners failed to demonstrate that the dissension between them and the appellant resulted in a deadlock precluding the successful and profitable conduct of the corporation’s affairs” (decided under Business Corporation Law § 1104 [a] [3])]; Matter of Cantelmo, 275 App Div 231 [1st Dept 1949]; Peter A. Mahler, Shareholder Wars: Internal Disputes In Close Corporations Do Not Always Lead to Judicial Dissolution, 76 NY St BJ 28 [Oct. 2004] [written shortly after the Fazio Realty Corp. decision and ably collecting the cases on the *413 subject]; cf. Matter of Wagner v Dombrowsky, 6 Misc 3d. 1041[A], 2005 NY Slip Op 50384[U], *5 [Sup Ct, Nassau County 2005] [ordering a hearing under the section 1104 (a) (3) standard when a bona fide factual dispute was presented whether business prospects for the corporation were viable, but conceding that “ ‘the mere fact that a closely held corporation may have substantial liquid assets which a shareholder wishes to reach is an insufficient basis for judicial dissolution’ ” (quoting Matter of Murphy [Gallagher Bros. Sand & Gravel Corp.], 120 AD2d 733, 736 [2d Dept 1986])]).
A fortiori, petitioner’s showing under the more stringent standard of Limited Liability Company Law § 702 is insufficient here.[3] Summary determination is appropriate on this record. “[T]he petitioner having neither requested to add to the record nor having sought a hearing on the facts (see, Siegel, NY Prac §§ 554, 556), but, instead, having chosen to rely solely on its documentary submissions which were insufficient to meet its burden, the petition should have been dismissed.” (Matter of Conduit & Found. Corp. v Metropolitan Transp. Auth., 66 NY2d 144, 150 [1985]; see also, Matter of Battaglia v Schuler, 60 AD2d 759, 759-760 [4th Dept 1977] [“both parties requested a final determination on the merits and neither asserted that the record presented questions of fact requiring a hearing”].)
Having sought involuntary dissolution only, the court has no occasion to consider whether any other remedies are available to petitioner in the circumstances. (Douglas K. Moll, supra, 40 Wake Forest L Rev at 968-975.)
Accordingly, the petition is dismissed. The counterclaims have no place in this special proceeding, and are dismissed without prejudice on the court’s motion. Respondents’ motion for a preliminary injunction is denied without prejudice to any other remedy they may have in a separate action or proceeding.

. One commentator has opined that, to the extent Spires stands for the proposition advanced by petitioner in this case, it would “miscontru[ej [the] statutory provision that members cannot withdraw prior to LLC dissolution [section 606 (a)] to mandate judicial dissolution after member withdrawal.” (J. William Callison & Maureen A. Sullivan, Limited Liability Companies: A State-by-State Guide to Law and Practice § 10:1 n 3 [2005 ed].) I do not believe that Spires was decided under section 606, but rather properly was decided under section 702, because the standard of the latter provision on the record in Spires unquestionably was met.

. In this aspect, the analogy to the corporate context is apt for the reasons described above, and because “dissolution is a drastic remedy. ‘There is no absolute right to dissolution’ of a corporation, for that determination lies in the discretion of the court (Matter of Radom & Neidorff, 307 NY 1, 7).” (Matter of John Luther & Sons Co. v Geneva Bldrs. & Trade Assn., 52 AD2d 737, 738 [4th Dept 1976].)

. Petitioner’s reference to the failure of consideration and that there was no meeting of the minds as independent grounds for dissolution fails again to take account of the section 702 standard which must be applied in this proceeding.