138

[829 NYS2d 488]

SOTERIOS (STEVE) TZOLIS et al., Individually and in the Right and on Behalf of PENNINGTON PROPERTY CO. and Another, et al., Appellants-Respondents, v HERBERT WOLFF et al., Respondents-Appellants, and PARKWAY LLC et al., Respondents, et al., Defendants.

First Department, February 8, 2007

### APPEARANCES OF COUNSEL

*Feldman Weinstein & Smith LLP*, New York City (*Eric S. Weinstein* and *Yong Hak Kim* of counsel), for appellants-respondents.

*Brown Raysman Millstein Felder & Steiner LLP*, New York City (*Kenneth M. Block* and *Daniel J. O'Connell* of counsel), for Herbert Wolff, respondent-appellant.

*Loeb & Loeb LLP*, New York City (*David M. Satnick* and *John A. Piskora* of counsel), for Parkway LLC and Pennington Leasing Corp., respondents, and 316 Pennington LLC, respondent-appellant.

### OPINION OF THE COURT

MARLOW, J.

The issue before us is whether, in the absence of express language in the Limited Liability Company Law (§ 101 *et seq.*), a member of a limited liability company has standing to sue derivatively on the company's behalf. We hold that the mere omission of this language from this particular statute, a factor other courts see as a sole or significant reason to reject standing, is not enough to deprive a limited partner of the right to

assert a claim on behalf of the company. We believe there are persuasive factors compelling us to give such a plaintiff standing.

In 1977, nine individuals created Pennington Property Co. (the Pennington Partnership), a general partnership, to own and operate a hotel with approximately 184 single-room occupancy units at 316 West 95th Street in Manhattan. We note that plaintiffs owned a collective 25% interest in the Pennington Partnership, defendant Herbert Wolff ultimately acquired a 45% interest, and defendants Toby Birnbaum and Mark Cwern acquired the 10% interest of Rita Cwern, a former partner.

On October 1, 1980, the Pennington Partnership leased the property to 316 West 95th Street Hotel Corp. for 21 years. Plaintiffs allege that in 1994, seven years before the lease expired, the Pennington Partnership secretly granted a new 30-year lease—from October 1, 2001, to September 30, 2031—(the second lease) to defendant Pennington Leasing Corp. at a rent far below market value. Plaintiffs maintain that the transaction was not at arm's length, because shareholders of the lessee (Pennington Leasing Corp.) were family and friends of certain members of the lessor (the Pennington Partnership).[1]

In September 1995, the Pennington Property Company LLC (hereinafter the Pennington LLC) filed articles of organization converting the Pennington Partnership to a limited liability company, with unchanged membership interests. Plaintiffs maintain that defendant Wolff managed the Pennington LLC, but that it never formally adopted an operating agreement. By a deed recorded on May 30, 1997, the Pennington Partnership purportedly transferred the premises to the Pennington LLC.

Plaintiffs further contend that on or about March 28, 2005, defendant Solomon Freedman, who owned no interest in the Pennington LLC, executed a contract, purportedly on behalf of the Pennington LLC, to sell the property to defendant 316 Pennington LLC, another entity the Podolskys owned and controlled, for $1.9 million. Plaintiffs claim the price was below market value.

One month later, Freedman notified each Pennington LLC member of the sale and requested each to sign an enclosed approval form, whereby each would not only agree to the sale but

---

1. In 2003, defendant Parkway LLC, a company owned and controlled by defendants Jay and Stuart Podolsky, acquired Pennington Leasing Corp., the holder of the second lease.

also to pay a $100,000 fee to Freedman and Wolff for, in part, negotiating the transaction. Wolff, Birnbaum and Cwern, who together represented 55% of the interest in the Pennington LLC, executed the consent form. Plaintiffs also allege that at closing the parties amended the contract to lower the price yet further below market value to $1.2 million.

Consequently, plaintiffs commenced this action, individually and on behalf of the Pennington Partnership and the Pennington LLC, seeking a judgment declaring the sale of the premises and the execution of the second lease unauthorized and void (first and second causes of action, respectively). Plaintiffs alleged that Freedman lacked the capacity to sign the requisite documents on behalf of the Pennington LLC and the sale was without the required approval of the members because, as interested parties, Wolff and Birnbaum could not give their consent. Plaintiffs further contended that the price was substantially below the property's market value, thus rendering the sale unlawful and unconscionable. As for Parkway LLC's acquisition of Pennington Leasing Corp., plaintiffs asserted that this arrangement effectively constituted an assignment of the second lease, which necessitated the owner's prior written consent, which was never obtained. In addition, the complaint alleged causes of action for breach of fiduciary duty (third cause of action asserted against Herbert Wolff and Solomon Freedman) and aiding and abetting such breach (fourth cause of action asserted against 316 Pennington, Jay Podolsky, Stuart Podolsky and Toby Birnbaum).

As relevant to this appeal, 316 Pennington moved to dismiss the first and fourth causes of action asserted against it in the amended complaint and to cancel the notice of pendency. The Podolsky defendants and Wolff separately cross-moved to dismiss the amended complaint as against them. Parkway LLC and Pennington Leasing Corp. moved to dismiss the second cause of action of the amended complaint as against them.

The motion court dismissed the first and second causes of action on the ground that the individual plaintiffs lacked standing to assert a derivative claim on behalf of the Pennington LLC, and ordered the clerk to cancel the notice of pendency.[2] The court denied the balance of defendants' respective cross motions

2.  The motion court also dismissed the fifth cause of action for breach of fiduciary duty asserted against Herbert Wolff, Irving Goldofsky and Sam Goldofsky, but plaintiffs do not challenge this aspect of the decision and order on appeal.

and dismissed the action as against defendants Irving Goldofsky, Sam Goldofsky, Rita Cwern, Pennington Leasing Corp. and Parkway LLC.[3]

Plaintiffs on appeal claim they do have standing to assert the first and second causes of action.[4] Defendant Wolff cross-appeals the denial of his motion to dismiss the third cause of action and defendants Jay and Stuart Podolsky and 316 Pennington separately cross-appeal the denial of their motions to dismiss the fourth cause of action.

We have never decided whether a member of a limited liability company has standing to maintain a derivative action. Absent any authority from this Court, the motion court was bound to follow the applicable ruling of another department (*see People v Shakur*, 215 AD2d 184, 185 [1995]). Apparently relying solely on McKinney's Practice Commentaries, which note the "conscious omission" from the Limited Liability Company Law of the right to bring a derivative action (Rich, Practice Commentaries, McKinney's Cons Laws of NY, Book 32A, Limited Liability Company Law, 2007 Pamph, at 6), the Second Department held that a member of a limited liability company has no standing to bring a derivative claim (*see Hoffman v Unterberg*, 9 AD3d 386, 388-389 [2004]). The Second Department has recently reiterated this position—but this time only in dicta (*see Caprer v Nussbaum*, 36 AD3d 176, 189 [2006]).[5]

We respectfully decline to follow the Second Department given (1) the historic judicial recognition of the common-law right to bring a derivative action on behalf of a corporation or a limited partnership, both of which share many of a limited liability company's characteristics; (2) the principles of statutory construction, which provide that only a clear statement of legislative intent may override the common law; (3) the fact that most states provide a statutory right to bring a derivative claim; and (4) the unpersuasive rationale of those decisions

---

3. The action against Sol Orbuch was discontinued.

4. Plaintiffs also separately appeal from a subsequent order entered July 6, 2006, which granted the motion of defendants Parkway LLC and Pennington Leasing Corp. to dismiss the second cause of action and cancel the notice of pendency.

5. The issue in *Caprer* was whether condominium unit owners could bring a derivative action on behalf of the condominium. Notably, the Court held that "[c]ondominium unit owners are . . . entitled to the same consideration by the courts as the litigants in those situations in which the courts have historically allowed derivative actions to proceed, independent of any statutory authority" (*id.*).

which have rejected derivative claims for limited liability company members.

The Limited Liability Company Law is a hybrid of the corporate and limited partnership forms, offering the tax benefits and operating flexibility of a limited partnership with the limited liability protection a corporation provides. While corporate shareholders and limited partners are specifically entitled by statute to bring derivative suits on behalf of their respective corporate and partnership entities, those rights were recognized at common law long before the Legislature codified them (*see Bischoff v Boar's Head Provisions Co., Inc.*, 436 F Supp 2d 626, 630 [SD NY 2006]; *see also Riviera Congress Assoc. v Yassky*, 18 NY2d 540, 547 [1966] [limited partners may sue derivatively on behalf of the partnership]; *Brinckerhoff v Bostwick*, 88 NY 52, 59 [1882], *writ of error dismissed* 106 US 3 [1882] [stockholders have standing to sue corporation in their own names]). Because a limited liability company structure blends key aspects of both the partnership and corporate forms, sharing similar characteristics of each, a fortiori, there is no reason to deprive members of limited liability companies of the same important right to bring a derivative action possessed by the members of limited partnerships and corporations. Indeed, there is nothing inherent in the limited liability company structure, operation, purpose, status, or benefits that would call for treating its members any differently, on the issue of standing, from the shareholders of corporations or the members of limited partnerships.

The absence of a specific statutory grant of this right is not fatal to plaintiffs' derivative claims.[6] In addition to the rights afforded stockholders and limited partners, courts have historically allowed individuals to advance derivative claims notwithstanding the lack of express statutory authority (*see e.g. Velez v Feinstein*, 87 AD2d 309 [1982], *lv dismissed in part and denied in part* 57 NY2d 737 [1982], 57 NY2d 605 [1982] [trust beneficiaries allowed to commence derivative action on trust's behalf]; *Caprer v Nussbaum*, 36 AD3d 176 [2006], *supra* [condominium unit owners have standing to assert derivative action, independent of statutory authority]). And indeed, federal courts, applying New York law, have found that such a right exists for

---

**6.** A statutory right to bring a derivative claim on behalf of a limited liability company exists in most states (*see* Callison and Sullivan, Limited Liability Companies: A State-by-State Guide to Law and Practice § 4.7 [2006 ed]).

members of limited liability companies (*see Bischoff,* 436 F Supp 2d at 634 [taking into consideration the common law, the Limited Liability Company Law, its legislative history, and federal and state court precedent, New York Court of Appeals would hold that a member of a New York limited liability company may bring derivative suit on behalf of company]; *Weber v King,* 110 F Supp 2d 124, 131 [ED NY 2000] [failure to include a derivative action provision in Limited Liability Company Law does not prevent recognition of such a right at common law]).

We find it wholly unpersuasive that, because the Legislature, apparently purposefully, omitted the right of a member to advance a derivative claim from the Limited Liability Company Law, such claims must be denied. Notably, while the statute's earlier versions contained a provision for a derivative action, the reason for its omission was "purportedly to ease passage of the balance of the statute" (*Bischoff,* 436 F Supp 2d at 629, citing Rich, Practice Commentaries, *supra* ["to avoid jeopardizing passage of the balance of the law" this provision "was dropped" (at 630, quoting Rich at 6)]).

Indeed, "it is a general rule of statutory construction that a clear and specific legislative intent is required to override the common law" (*Hechter v New York Life Ins. Co.,* 46 NY2d 34, 39 [1978]; *see also Rabouin v Metropolitan Life Ins. Co.,* 307 AD2d 843, 844 [2003]). We believe the statute's silence on this issue cannot be construed as a specific legislative intent to override the common law, nor do we perceive any reason to do so (*see Bischoff,* 436 F Supp 2d at 631-632; *see also* Callison and Sullivan, Limited Liability Companies: A State-by-State Guide to Law and Practice § 4.7 [2006 ed] [even when right to bring a derivative claim is not available under the limited liability company statute, court may recognize common-law right for members to sue derivatively]). We are aware of that portion of the Practice Commentaries (Rich, Practice Commentaries at 6), which explains the absence of language affording limited liability company members a right to bring a derivative action and suggesting that the statute's silence was a strategic compromise to increase the likelihood of the passage of the "balance of the law." As seductive as that circumstance may appear as a basis for the theory adopted by the Second Department in *Hoffman v Unterberg* (9 AD3d 386 [2004], *supra*), we respectfully disagree with that holding, because we believe it to be at odds with the long-standing rules of statutory construction requiring

a clear expression of legislative intent to overrule a common-law principle.[7]

Defendants maintain that—the question of standing aside—the sale and lease are valid because a majority of the Pennington LLC's members approved the transaction in accordance with the partnership agreement. Plaintiffs argue that the sale of the company's sole asset was an extraordinary event for which the partnership agreement required unanimous approval. Should the partnership agreement no longer apply—in light of the change from a partnership to a limited liability company—plaintiffs alternatively argue that a two-thirds majority was required pursuant to the statute in effect on the date of sale. Plaintiffs also claim that the consents for the sale are invalid under the statute since Wolff and Birnbaum both had a financial interest in that transaction, and that Parkway LLC's acquisition of Pennington Leasing Corp. (the holder of the second lease) constituted an assignment of the second lease, the terms of which require written consent from the lessor (the Pennington Partnership). However, plaintiffs maintain that although Wolff signed an agreement and consent to the acquisition, he had no authority to bind the lessor-landlord, he signed the consent in his individual capacity, and the consent made no reference to the lease agreement or leased property.

■ Defendants are not entitled to have the court dismiss these claims based on documentary evidence. The parties' agreement does not conclusively establish that only a mere majority was required to approve the sale. Indeed, since the sale was of the company's sole asset, it would appear, at this early stage of the action, that plaintiffs are likely correct in interpreting the agreement to require unanimous approval. In any event, regardless of whether a majority, two-thirds, or unanimous vote was required, Limited Liability Company Law § 411 disallows a transaction between a limited liability company and one or more of its managers, or with another business entity in which one or

---

7. We note other decisions, relied on by defendants and the motion court, which hold that no derivative right exists. However, these decisions are not binding on this Court, nor do they persuasively argue for this result. In *Lio v Mingyi Zhong* (10 Misc 3d 1068[A], 2006 NY Slip Op 50016[U], *4 [2006]), the court, citing only two cases, noted that "most courts have held that the deliberate omission of such a remedy in the statute means that there is no such right at all" and therefore concluded that the "more persuasive authority is that there is no such right." One of the cases cited is *Hoffman (supra)*. The other is *Schindler v Niche Media Holdings* (1 Misc 3d 713 [2003]), which like *Hoffman* relies only on the Rich Practice Commentaries.

more of its managers has a substantial financial interest. Therefore, plaintiffs have alleged a viable cause of action which the documentary evidence does not refute. Nor does the documentary evidence establish that there was consent to an assignment of the second lease in accordance with the lease agreement so as to compel dismissal of this cause of action at this juncture.

We also reject defendants' challenges to the causes of action for breach of fiduciary duty and for aiding and abetting the breach. Accepting the truth of plaintiffs' allegations, as CPLR 3211 requires on a motion to dismiss (*see Goldman v Metropolitan Life Ins. Co.*, 5 NY3d 561, 570-571 [2005]), they advance a potentially viable claim for breach of fiduciary duty (*see* Limited Liability Company Law § 409 [a]; *Birnbaum v Birnbaum*, 73 NY2d 461, 465-466 [1989]; *Salm v Feldstein*, 20 AD3d 469 [2005]). Similarly, plaintiffs have sufficiently stated a cause of action for aiding and abetting a breach of fiduciary duty (*cf. Global Mins. & Metals Corp. v Holme*, 35 AD3d 93, 101-102 [2006]).

Accordingly, the order of Supreme Court, New York County (Herman Cahn, J.), entered March 23, 2006, which, to the extent appealed and cross-appealed from, as limited by the briefs, dismissed the first and second causes of action in the first amended complaint and denied certain defendants' motions to dismiss the third and fourth causes of action, should be modified, on the law, the first cause of action reinstated against Herbert Wolff, 316 Pennington LLC, Jay Podolsky, Stuart Podolsky, Solomon Freedman, Toby Birnbaum, and the second cause of action reinstated against Herbert Wolff, 316 Pennington LLC, Jay Podolsky, Stuart Podolsky, Solomon Freedman, Toby Birnbaum, Parkway LLC and Pennington Leasing Corp., the notice of pendency reinstated, and otherwise affirmed, without costs. The order of the same court and Justice, entered July 6, 2006, which granted the motion of defendants Parkway LLC and Pennington Leasing Corp. to dismiss the second cause of action, should be reversed, on the law, without costs, the motion denied and the cause of action reinstated.

TOM, J.P., WILLIAMS, CATTERSON and MALONE, JJ., concur.

Order, Supreme Court, New York County, entered March 23, 2006, modified, on the law, the first cause of action reinstated against Herbert Wolff, 316 Pennington LLC, Jay Podolsky, Stu-

art Podolsky, Solomon Freedman, Toby Birnbaum, and the second cause of action reinstated against Herbert Wolff, 316 Pennington LLC, Jay Podolsky, Stuart Podolsky, Solomon Freedman, Toby Birnbaum, Parkway LLC and Pennington Leasing Corp., and the notice of pendency reinstated, and otherwise affirmed, without costs. Order, same court, entered July 6, 2006, reversed, on the law, without costs, the motion denied and the cause of action reinstated.