OPINION OF THE COURT
Thomas A. Standee, J.
The petitioner, Timothy J. Spires, as a member of Lighthouse Solutions, LLC,[1] submits an order to show cause seeking an order (a) dissolving Lighthouse Solutions, LLC; (b) appointing a receiver to gather the assets of Lighthouse, to market and liquidate such assets and thereafter to distribute to the members the proceeds of such liquidation; and (c) granting such other and further relief as is just.
I. Facts
The petitioner commenced this application for a judgment dissolving the limited liability company Lighthouse Solutions, LLC (Lighthouse or LLC) against Lighthouse, Raymond Caster-line and Mark Alamo, by verified petition filed on October 29, 2003. The petition seeks a determination that the partnership has been dissolved pursuant to Partnership Law § 69 (1); the appointment of a receiver and authorization of such receiver to sell the assets of Lighthouse; directing the receiver to wind up the affairs of Lighthouse; and/or alternatively the dissolution of Lighthouse pursuant to the Limited Liability Company Law.
In November 1999 petitioner, Casterline and Alamo formed Lighthouse Solutions, LLC by the filing of “Articles of Organization of Lighthouse Solutions LLC.” This document was executed by Timothy J. Spires as organizer and states, among other things, “[t]he limited liability company is to be managed by 1 or more members.” Thereafter, on November 16, 1999 Timothy J. Spires, president of Lighthouse, executed a “Certification of Authority of Lighthouse Solutions LLC,” which states as follows: “This LLC is managed by its members. The names and addresses of each of its current members as of 11/16/99 are listed below. Each of these persons has managerial authority and equal percentage ownership of the LLC and is empowered to transact business on its behalf.” The stated members of Lighthouse are Spires, Casterline and Alamo.
*430 On April 3, 2002 these three members executed a document entitled “Lighthouse Solutions, LLC Operating Agreement Amendment, March 21, 2002.” This document sets forth provisions agreed to by the members related to dissolution provisions, disability and sale of member interests. This document specifically states:
“[t]his document, as of the date agreed to and signed below, overrides any provisions, either default or otherwise, as established in the Lighthouse Solutions, LLC Operating Agreement for a period of 60 days or until agreed and terminated prior by the consent of the Members of Lighthouse Solutions as on File.”
This document was executed by the members of Lighthouse on April 3, 2002. By its terms the provisions in this document terminated 60 days after April 3, 2002.
Another document entitled “LHS Partner’s Interim Voting Agreement” (voting agreement) was executed in May 2003. This agreement outlines an interim process for the partners to vote upon routine business matters and indicates it is “intended to be an interim measure until the LHS operating plan (or other appropriate document) establishes a more thorough process.” This agreement lists five Lighthouse partners, with the new partners being Michael Faraoni and Kenneth Peters. All five of the partners executed this document by May 16, 2003. The agreement states: “This interim voting mechanism will be in effect until 12/31/2003 or until obsoleted[sic]/superceded by another LHS document/procedure/event . . . .” (LHS Partner’s Interim Voting Agreement § V) This voting agreement terminated December 31, 2003.
The three members of Lighthouse, Spires, Casterline and Alamo, had disagreements concerning the business and its operations in August 2003 and thereafter. There were numerous discussions among the members about Spires departing the business and surrendering his interest. However, the parties could not reach an acceptable agreement. Spires alleges that in October 2003 his passwords no longer worked to access the computer servers, databases, equipment and bank accounts of Lighthouse, and that he was denied access to the premises by a change of the key to the Lighthouse premises. On October 16, 2003 Spires, as an authorized member of Lighthouse, withdrew from the business bank account $120,000, representing approximately one third of the funds on deposit. This money is currently retained in the Harris Beach LLP trust account.
*431 There is a temporary restraining order enjoining and restraining the petitioner and respondents from the sale or disposition of any assets of Lighthouse, except in the ordinary course of business. This order also requires the petitioner to maintain the funds of Lighthouse on deposit in the Harris Beach LLP trust account.
II. Dissolution of Lighthouse Solutions, LLC under the Partnership Law
The petitioner seeks dissolution of Lighthouse pursuant to New York Partnership Law as a result of the failure of the members to adopt an “Operating Agreement.” The petitioner argues that Lighthouse was operated as a partnership because it never adopted an “Operating Agreement.”
Petitioner relies on section 417 of the Limited Liability Company Law which states: “[s]ubject to the provisions of this chapter, the members of a limited liability company shall adopt a written operating agreement that contains any provisions not inconsistent with law or its articles of organization . . . .” (Limited Liability Company Law § 417 [a].) There is no written agreement submitted by the parties entitled an “Operating Agreement.” Therefore, petitioner concludes that Lighthouse is not a limited liability company but instead is a partnership, that he may elect to terminate the partnership, and that such withdrawal of Spires from the partnership dissolves Lighthouse pursuant to Partnership Law § 62.
Petitioner’s legal argument is without merit. There is no provision in the Limited Liability Company Law imposing any type of penalty or punishment for failing to adopt a written operating agreement. The statute does not require an operating agreement prior to the formation of this type of entity (see Limited Liability Company Law § 417). There is no statute or common law that leads to the conclusion that the failure to enter into an operating agreement transforms a limited Lability company into a partnership.
The Limited Liability Company Law sets forth when this type of entity is formed:
“A limited liability company is formed at the time of the filing of the initial articles of organization with the department of state or at any later time specified in the articles of organization . . . The filing of the articles of organization shall, in the absence of actual fraud, be conclusive evidence of the formation of the limited liability company as of *432 the time of filing or effective date if later ... A limited liability company formed under this chapter shall be a separate legal entity, the existence of which as a separate legal entity shall continue until the cancellation of the limited liability company’s articles of organization.” (Limited Liability Company Law § 203 [d].)
The verified petition has a copy of the articles of organization of Lighthouse attached as an exhibit. There are no allegations that the articles of organization were not properly filed with the Department of State on or about November 11, 1999. Further, the attorney for petitioner concedes that the petitioner does not contest that Lighthouse Solutions, LLC was formed as a limited liability company by the filing of the articles of organization.
Pursuant to Limited Liability Company Law § 203, Lighthouse Solutions, LLC was formed at the time of the filing of the articles of organization of Lighthouse Solutions, LLC with the Department of State. According to the statute, the filing is conclusive evidence of the formation of the limited liability company and it shall continue as a separate legal entity until the cancellation of the limited liability company’s articles of organization (Limited Liability Company Law § 203). Therefore, this court concludes that Lighthouse Solutions, LLC is a limited liability company and is governed by the Limited Liability Company Law.
The application of the petitioner to dissolve Lighthouse as a partnership entity based upon the Partnership Law is denied.
III. Dissolution of Lighthouse Solutions, LLC under the Limited Liability Company Law
In the alternative, petitioner requests dissolution of Lighthouse pursuant to New York common law based upon the complete failure of the business purpose of Lighthouse and failure of the original intention of the members. The Limited Liability Company Law provides for the judicial dissolution of a limited liability company. “On application by or for a member, the supreme court . . . may decree dissolution of a limited liability company whenever it is not reasonably practicable to carry on the business in conformity with the articles of organization or operating agreement.” (Limited Liability Company Law § 702.) To determine whether dissolution of Lighthouse Solutions, LLC is warranted, this court must look at whether or not it is reasonably practicable to carry on the business in conformity with the articles of organization or operating agreement.
*433 A. Articles of Organization
The “Articles of Organization of Lighthouse Solutions LLC” do not contain provisions for the operation of the business other than to state that “[t]he limited liability company is to be managed by 1 or more members.” There are three members of Lighthouse: Spires, Casterline and Alamo. Any one of these members could manage Lighthouse and be in conformity with the articles of organization.
It is “reasonably practical” that the business of Lighthouse can be continued in conformity with its articles of organization. There is no finding that it is not “reasonably practicable” to carry on the Lighthouse business in conformity with its articles of organization. There is no basis for a judicial dissolution under the provisions of the articles of organization.
B. Operating Agreement
This court may decree dissolution of Lighthouse whenever it is not reasonably practicable to carry on the business in conformity with its operating agreement. Under the Limited Liability Company Law, “operating agreement” means: “any written agreement of the members concerning the business of a limited liability company and the conduct of its affairs and complying with section four hundred seventeen of this chapter.” (Limited Liability Company Law § 102 [u].) Section 417 of the Limited Liability Company Law addresses the adoption of an operating agreement.
“(a) Subject to the provisions of this chapter, the members of a limited liability company shall adopt a written operating agreement that contains any provisions not inconsistent with law or its articles of organization relating to [i] the business of the limited liability company, [ii] the conduct of its affairs and [iii] the rights, powers, preferences, limitations or responsibilities of its members, managers, employees or agents, as the case may be.” (Limited Liability Company Law § 417 [a].)
In the event that there is not a formal written “Operating Agreement” of the company, or such agreement does not address certain business matters, then there are numerous sections in the statute that set forth default provisions applicable to the limited liability company (see Limited Liability Company Law §§ 401-704).
The respondents argue that certain documents of Lighthouse, although not entitled “Operating Agreement,” are sufficient to *434 be defined as an operating agreement under the statute. These documents are a “Certification of Authority of Lighthouse Solutions LLC,” “Lighthouse Solutions, LLC Operating Agreement Amendment,” and “LHS Partner’s Interim Voting Agreement.”
1. Certification of Authority of Lighthouse Solutions, LLC
The “Certification of Authority of Lighthouse Solutions LLC” sets forth the members of the LLC, with their addresses and the percentage of ownership of each member. It also indicates that the LLC is managed by its members, that each member has managerial authority, and that each member is empowered to transact business. This document was executed on November 16, 1999 by Timothy J. Spires as president of Lighthouse.
Under the definitions for the Limited Liability Company Law, an operating agreement is a written agreement of the members (Limited Liability Company Law § 102 [u]; see Limited Liability Company Law § 417). The “Certification of Authority of Lighthouse Solutions LLC” is not a written agreement of the members. The members did not execute this document and it cannot be considered a written agreement of the members. The document was only signed by Spires as the president of Lighthouse.
This document does not qualify under the statute as an operating agreement of Lighthouse Solutions, LLC.
2. Lighthouse Solutions, LLC Operating Agreement Amendment
The “Lighthouse Solutions, LLC Operating Agreement Amendment” was agreed to on April 3, 2002 by all the principals or members of Lighthouse. This document is sufficient to meet the requirements of an operating agreement under the Limited Liability Company Law.
However, the terms of this operating agreement amendment specifically state that “[t]his document. . . overrides any provisions, as established in the Lighthouse Solutions, LLC Operating Agreement for a period of 60 days or until agreed and terminated prior by the consent of the Members . . . .” This document terminated 60 days after it was executed on April 3, 2002. Although qualifying as an operating agreement by its form, it is no longer effective and expired in June 2002.
3. LHS Partner’s Interim Voting Agreement
The LHS Partner’s Interim Voting Agreement was executed on May 16, 2003 by five LHS partners. This document is in writing and sets forth an agreement concerning voting and *435 Lighthouse ownership. The terms of this interim voting agreement were in effect until December 31, 2003 or until made obsolete by another document.
“This interim voting mechanism will be in effect until 12/31/2003 or until obsoleted[sic]/superceded by another LHS document/procedure/event (things such as completion of the LHS Operating Agreement, addition, or loss, of an LHS Partner). The superceding document/procedure must, at a minimum, be unanimously agreed upon by the LHS Owners (MA, RC, and TS).” (LHS partner’s interim voting agreement § Y.)
The members and partners of Lighthouse were required to comply with the provisions of this interim voting agreement during the period it was in effect, from May 16, 2003 through December 31, 2003. This document meets all the requirements to be defined as an “Operating Agreement” under the statute. The “LHS Partner’s Interim Voting Agreement” is an operating agreement of Lighthouse (see Limited Liability Company Law § 102 [u]; § 417).
4. Operating Agreement by Statute
The interim voting agreement, which qualifies as an “Operating Agreement” under the statute, sets forth specific terms related to voting agreed to by the members for the period from May 2003 through December 2003. There is no other “Operating Agreement” of Lighthouse which establishes procedures or policies for the operation of the business; which delineates the conduct of its affairs; or which sets forth the rights, powers, and responsibilities of its members, managers and employees.
Lighthouse, as a limited liability company, is governed by the Limited Liability Company Law for its operation, conduct, duties, powers, and rights of its members. Throughout this statute the sections state: “except as provided in the operating agreement” or “if the operating agreement does not so provide” or “unless otherwise provided in an operating agreement” (see Limited Liability Company Law §§ 401-704). These specific sections set forth default provisions governing limited liability companies. These default provisions establish the statutory terms imposed on a limited liability company for the operation of the business, the conduct of its affairs, and the rights, powers, and responsibilities of it members (id,.).
The statute clearly allows the members to enter into an operating agreement wherein the members can agree to certain *436 terms, conduct, and provisions for operating the business. However, when there is no operating agreement, or such agreement does not address certain subjects, then the entity is bound by the minimum requirements set forth in the Limited Liability Company Law. In this situation, the entity is required to operate according to the statutory provisions. These statutory default provisions of the Limited Liability Company Law become the “Operating Agreement” of the limited liability company.
The interim voting agreement is considered an “Operating Agreement” on voting issues as set forth therein. However, there was no operating agreement covering the majority of other issues effecting a limited liability company. Therefore, the business operation of the limited liability company, Lighthouse, was and is bound by the statutory default provisions of the Limited Liability Company Law.
When there is no written operating agreement, these statutory default provisions become the terms, conditions, and requirements for the conduct of the members for the operation of the limited liability company. On an application for judicial dissolution, when there is no formal operating agreement of the entity, or any such agreement does not address specific issues, the court must consider whether it is “not reasonably practicable” to carry on the business in conformity with the terms of a limited operating agreement or with the terms of the statutorily established operating agreement (see Limited Liability Company Law § 702).
C. Operation of the Business in Conformity with the Operating Agreement
The criteria for the judicial dissolution of a limited liability company is that the court “may decree dissolution . . . whenever it is not reasonably practicable to carry on the business in conformity with the . . . operating agreement” (see Limited Liability Company Law § 702).
The limited operating agreement of Lighthouse, consisting of the “LHS Partner’s Interim Voting Agreement,” terminated on December 31, 2003. However, it was effective during a portion of the time period that the members were disagreeing about the operation of Lighthouse. This interim voting agreement delineates that it covers the voting process for routine business matters only. This document states that it does not apply to “fundamental LLC matters/structure/etc. [including] items such as: hiring/firing Partners, changing Partnership ratios, LLC document specifics, etc.” (LHS Partner’s Interim Voting Agree *437 ment § VI.) Based on the terms stated in this interim voting agreement, the issues raised in this dissolution application relating to the withdrawal or removal of one of the members is not addressed by this limited operating agreement. Thus, the only “Operating Agreement” that is applicable to this dissolution application is the operating agreement created by the default provisions contained in the Limited Liability Company Law.
The relevant issue in this application for dissolution is the withdrawal or removal of a member of Lighthouse. The statutory default provision for withdrawal of a member of Lighthouse Solutions, LLC states that “a member may not withdraw from a limited liability company prior to the dissolution and winding up of the limited liability company” (Limited Liability Company Law § 606 [a]).[2] This statute explicitly requires dissolution and winding up of the LLC prior to withdrawal of a member (id..).[3] Thus, under the applicable statutory operating agreement, Lighthouse must be dissolved and the business wound up prior to the withdrawal or removal of any of its members (see Limited Liability Company Law § 606 [a]).
The evidence presented in the verified petition and verified response to verified petition demonstrates that Spires wanted to withdraw as a member of Lighthouse and/or that Casterline and Alamo wanted to remove Spires as a member of the LLC. The submitted information shows that all three wanted the business relationship to end, but they could not reach a consensus as to how to accomplish Spires leaving Lighthouse. The facts are that Spires was locked out of the Lighthouse business by the physical change of the locks to access the business premises and by the change of passwords to access the computers of the business. Spires exercised his rights as a member of Lighthouse and withdrew money from the Lighthouse bank account. There are no questions of fact on these issues.
*438 This court must now assess the ability to carry on the business of Lighthouse in conformity with the statutory operating agreement. Based, on the terms of the default statutory operating agreement applicable to Lighthouse, it is “not reasonably practicable” for Lighthouse to carry on its business in conformity with the operating agreement. The terms of the operating agreement require the dissolution and winding up of Lighthouse prior to the withdrawal of its member, Timothy Spires (Limited Liability Company Law § 606 [a]). Spires’ withdrawal as a member of the LLC, or his removal by the remaining members of the LLC, triggers the dissolution and winding up of Lighthouse (Limited Liability Company Law § 606).[4] There is no other provision or mechanism in the statutory operating agreement for Timothy Spires, as a member of Lighthouse, to withdraw or be removed from the business.
Under the facts and circumstances presented, this court exercises its discretion and decrees judicial dissolution of Lighthouse Solutions, LLC as it is not reasonably practicable for Lighthouse to carry on its business in conformity with an operating agreement that explicitly requires the dissolution and winding up of Lighthouse prior to withdrawal of one of its members, Timothy Spires (see Limited Liability Company Law § 702).
The application by Timothy J. Spires, as a member of Lighthouse Solutions, LLC, for the judicial dissolution of Lighthouse Solutions, LLC is granted. Lighthouse Solutions, LLC is dissolved pursuant to Limited Liability Company Law § 702.
Articles of dissolution shall be filed within 90 days of the dissolution and commencement of winding up of Lighthouse Solutions, LLC (Limited Liability Company Law § 705). The parties must comply with the Limited Liability Company Law in dissolving Lighthouse.[5]
*439 D. Winding Up of Lighthouse Solutions, LLC
This court must direct the winding up of affairs of Lighthouse Solutions, LLC (Limited Liability Company Law § 703). The court may allow the members of the LLC to wind up the affairs of Lighthouse or, in its discretion, may appoint a receiver or liquidating trustee (id.). The winding up of the business is governed by Limited Liability Company Law §§ 703 and 704. Upon the winding up of Lighthouse Solutions, LLC, the assets shall be distributed pursuant to Limited Liability Company Law § 704.
The court reserves its decision on appointment of the party to conduct the winding up of Lighthouse Solutions, LLC to a conference, with clients, scheduled for Thursday, May 20, 2004, at 10:00 a.m.
The Lighthouse Solutions, LLC members, Raymond Caster-line and Mark Alamo, who concede they have continued to operate the business since the withdrawal/removal of member Timothy Spires in October. 2003, shall provide a full accounting and report on the business of Lighthouse to the court and counsel for petitioner by May 12, 2004 for discussion at the May 20, 2004 conference.
Order
Based upon all the papers submitted in support and in opposition to this application for dissolution, upon the above decision, and after due deliberation, it is hereby ordered that the application of Timothy J. Spires, as a member of Lighthouse Solutions, LLC, for a judgment dissolving the limited liability company Lighthouse Solutions, LLC is granted; it is further ordered, adjudged and decreed that Lighthouse Solutions, LLC is dissolved; it is further ordered that the application of Timothy J. Spires, as a member of Lighthouse Solutions, LLC, for the winding up of the affairs of Lighthouse Solutions, LLC is granted; and it is further ordered that all other applications are denied.

. Lighthouse Solutions, LLC was incorrectly denoted in the RJI as “Timothy J. Spires, as a member of Lighthouse Solutions, Inc.” However, the caption properly seeks a judgment dissolving “Lighthouse Solutions, LLC.”

. This provision was adopted by legislation in 1999 to replace the prior statute. The language of the prior statute authorized written consent of at least two thirds of the members to withdraw, and if consent was not given, then withdrawal by at least six months’ prior written notice to the LLC (Historical and Statutory Notes, reprinted following McKinney’s Cons Laws of NY, Book 32A, Limited Liability Company Law § 606 [a]).

. The only mechanism for avoiding this stringent language requiring dissolution is the adoption of an operating agreement which sets forth the time or happening of events, and the procedure, for a member to withdraw Lighthouse did not adopt a written operating agreement delineating the terms and procedures for withdrawal of one of its members.

. The respondents assert that dissolution is unwarranted where Spires has not responded to settlement proposals or where a third-party evaluator could be appointed to determine a proper valuation of Lighthouse and each member’s interest in the company. Respondents argue that this would lead to the same result as dissolution, but would allow Lighthouse to continue as an ongoing entity. These are worthy arguments in settlement negotiations, but the court is bound by the statutory provisions upon the hearing and determination of the formal application for dissolution.

. The order of dissolution shall be filed with the Department of State within 30 days of its issuance (Limited Liability Company Law § 702). The ex *439 istence of Lighthouse as a limited liability company “shall continue until the cancellation of the limited liability company’s articles of organization” (Limited Liability Company Law § 203 [d]). “The cancellation of the articles of organization is effective at the time of filing of the articles of dissolution” (Limited Liability Company Law § 705 [b]).