# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-CA-01485-SCT

*DENNIS KILPATRICK*

*v.*

*WHITE HALL ON MS RIVER, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/29/2014 |
| TRIAL JUDGE: | HON. CARTER O. BISE |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | ROBERT THOMAS SCHWARTZ |
| | CHRISTIAN JANE'T STRICKLAND |
| | JEFFREY WARD BERTUCCI |
| ATTORNEYS FOR APPELLEE: | JOHN G. McDONNELL |
| | COURTNEY McDONNELL SNODGRASS |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 02/25/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., KING AND COLEMAN, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     On February 17, 2011, Dennis Kilpatrick filed a complaint against White Hall on MS River, LLC, in the Chancery Court for the Second Judicial District of Harrison County. The chancellor issued his final judgment on April 29, 2014, in favor of White Hall. The chancellor found that Kilpatrick was not a member of White Hall and that Kilpatrick was not entitled to the recovery of his capital contribution. Aggrieved, Kilpatrick appeals. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     The parties do not dispute the initial facts of the case. The chancellor's judgment outlines the background of the case:

> The creation of White Hall began with an informal gentleman's deal in which there would be five initial contributors[1] each putting up $500,000 with which to purchase land from International Paper. All of the parties were aware that the price per acre would increase substantially if the sale did not take place on or before December 31, 2007. Based on assurances from Mr. Kilpatrick as well as Mr. Moran, the sale did take place. Those assurances were that their remaining funds would be payable after the new year.
>
> However, due to the fact that there was only $2 million available at closing,[2] the interest rate at which the purchase could be made was substantially increased, and the entire acreage sought by White Hall would be encumbered by deeds of trust, thus making no collateral available, thus making the ability to use the timber on the land unavailable.

All five men had hunted on the property under a previous hunting club lease. The land sale contract was executed by White Hall, LLC, with Dominick Cvitanovich as the "Managing Member," and by Sustainable Forests LLC, a subsidiary of International Paper. White Hall obtained the property for $2,050 an acre, achieving that below-market-value price by promising to close the deal by the end of 2007. If the deal had not gone through on time, the price would have risen to $3,000 per acre on January 1, 2008.

¶3.     The sale closed on December 13, 2007. On December 17, Cvitanovich filed a certificate of formation with the Secretary of State to create White Hall on MS River, LLC.

---

[1] The initial contributors were Dennis Kilpatrick, Murray Moran, Dominick Cvitanovich, Jackie Richards, and James McBeth.

[2] Dennis Kilpatrick paid only 100,000 on December 19, 2007, at closing toward his $500,000 obligation. Murray Moran paid only $400,000 at the time of closing.

According to testimony at trial, Cvitanovich drafted an Operating Agreement for White Hall in January 2008. Cvitanovich testified that all five men received a copy of the Operating Agreement ("the Agreement") by the first half of 2008, the time during which he was in the process of completing White Hall's tax returns for 2007 with his tax advisors.

¶4. In the end, only three of the men executed the agreement: Cvitanovich, Richards, and McBeth. The signature page provided signature lines only for them. Cvitanovich testified that he revised the signature page to reduce the number of signature lines from five to three between January and August of 2008, before the Agreement was executed. As only three of the five members of the limited liability company (LLC) executed the Agreement, its validity was a key issue disputed at trial.

¶5. The Agreement stated that "Establishment of a Membership has been defined as a cash contribution of Five Hundred Thousand dollars ($500,000.00) for a membership interest of two (2) shares." Exhibit A, attached to the operating agreement, showed the capital contributions by all five men. Cvitanovich, Richards, and McBeth each had contributed $500,000. The alleged ambiguity of White Hall's membership requirements arises because, while the Agreement stated that a $500,000 capital contribution must made to become a member of White Hall, it also stated that "'Members' means the persons listed on attached Exhibit A." Exhibit A included Kilpatrick, though it also showed that he possessed "0" ownership shares.

¶6. The Agreement provided no procedure for including a person who failed to make the initial $500,000 contribution. However, for existing members, it stated that, "[e]xcept as

3

provided in Article 6 [Transfer of Membership Interests], no Member shall be entitled to withdraw or resign from the company." Further, the Agreement stated that "no Member shall have the right to receive any return of any Capital Contribution."

¶7.     Kilpatrick, Cvitanovich, Richards, and McBeth testified that Kilpatrick alerted the other men about his inability to timely wire $500,000 to International Paper only a few days before the date of closing.  Cvitanovich stated that the group went ahead with the deal because of their belief that Kilpatrick's outstanding $400,000 would imminently arrive, and because several other members already had wired their nonrefundable contributions to International Paper.  Kilpatrick testified he originally intended to draw the balance from his 401(k), but when the market crashed in 2008, his oil stocks depreciated in value and he did not want to cash them out.  Though Kilpatrick never tendered his $400,000 balance, he did pay $84,500 toward the quarterly interest payments on the three-year balloon note. Kilpatrick made all four quarterly interest payments in 2008, but he ceased making those quarterly interest payments in 2009.

¶8.     The White Hall tax records reported to the State of Mississippi and to the Internal Revenue Service indicate that Kilpatrick possessed an ownership interest in White Hall.  The White Hall tax records stated that Kilpatrick was a 4.75% owner in the LLC at the start of 2008 and an 8.00% owner at the end of the year.  The percentage decreased through 2009, and by the end of the year in 2010, Kilpatrick owned 0.00% of White Hall.

¶9.     Kilpatrick admitted at trial that he had known that his initial $100,000 payment was a 20% down payment, and that his quarterly interest payments on the three-year balloon note

4

were higher than the other men's payments because he still owed White Hall a balance of $400,000. Cvitanovich approached Kilpatrick first with queries about when the payment would be tendered, and then, as it became clear that the payment would not be forthcoming in full, with several payment plan proposals. Through 2009, Kilpatrick missed three quarterly interest payments. Thus, in November 2009, White Hall informed Kilpatrick that he could not continue to use the property without paying his contribution.

¶10. Kilpatrick removed his belongings from the hunting camp. During the course of 2010, Kilpatrick and his two sons formed an LLC and purchased a 460-acre hunting camp in Yazoo County for $650,000. On October 28, 2010, White Hall offered Kilpatrick $43,225 to reimburse him for the amount of his quarterly payments that had gone toward the principal, which he refused. Unable to pay off in cash the deed of trust owed to International Paper, White Hall then sold 1,269 acres of the hunting camp to Soterra Corporation. White Hall claims that its hand was forced to sell to Soterra because of Kilpatrick's failure to pay his full capital contribution.

¶11. In December 2010, Kilpatrick made a demand on White Hall to review the company records; White Hall refused. Kilpatrick filed his complaint against White Hall on MS River, LLC, in the Chancery Court of Harrison County, alleging that he was a member of White Hall and thus was entitled to inspect the company records. Further, Kilpatrick alleged that White Hall had violated the Mississippi Limited Liability Company Act by refusing him access to the records. He sought a declaratory judgment validating his ownership interest in White Hall, a finding that White Hall had been unjustly enriched by retaining Kilpatrick's

5

capital contribution of $186,500, and the establishment of an equitable lien or constructive trust to return that capital contribution to him.

¶12. After a trial, the chancellor found that Kilpatrick was not a member of White Hall, that he had come before a court of equity with unclean hands, and that he had no right to the return of his capital contributions. Kilpatrick appeals.

## ANALYSIS

¶13. Kilpatrick presents two issues for our consideration:

> **I.  Whether the Operating Agreement was valid and whether Kilpatrick was a member of White Hall.**
>
> **II. Whether Kilpatrick is entitled to any return of his capital contribution of $186,500.**

¶14. In resolving Kilpatrick's appeal, we remember that

> [w]e review a chancellor's legal conclusions de novo; that is, we reach our own conclusions as to the applicable law. But we ordinarily accept a chancellor's factual findings unless – given the evidence in the record – we conclude that the chancellor abused his or her discretion, and no reasonable chancellor could have come to the same factual conclusions.

*Bluewater Logistics, LLC v. Williford*, 55 So. 3d 148, 155 (Miss. 2011).

¶15. Kilpatrick argues that he was a member of White Hall and is entitled to repayment of his capital contribution. He states that the Agreement was void and alleges that his membership is valid, based on White Hall's tax returns and capital account ledgers. Kilpatrick claims that the Agreement is invalid because it was not signed by all members at its inception, as required under Mississippi Code Section 79-29-306(2)(a) (2009).[3] Thus,

---

[3] All of the facts relevant to the case *sub judice* occurred prior to January 1, 2011, so we apply the original Mississippi Limited Liability Company Act, Mississippi Code

6

Kilpatrick asks that the Court reverse the findings of the chancellor, find that White Hall was unjustly enriched, and establish either an equitable lien or a constructive trust to refund his monetary contribution.

¶16.    In response, White Hall argues that Kilpatrick never had obtained membership in White Hall under either Mississippi law or the terms of the Agreement. White Hall states that to create a constructive trust for Kilpatrick and to return his contribution would be an inequitable resolution under the law and the facts.

> **I.      White Hall's Operating Agreement was valid and Kilpatrick is not a member of White Hall.**

¶17.    At the close of trial, the chancellor concluded that "the operating agreement was not in effect as of the date of the filing of the certificate of formation of White Hall with the Secretary of State. This Court finds, however, that Dennis Kilpatrick is not and was not a member of the LLC." However, the chancellor did not make a clear finding as to whether the Agreement itself was valid and enforceable. The determination of Kilpatrick's membership *vel non* and the validity and enforceability of the Agreement requires the Court to apply the Mississippi Limited Liability Company Act (MLLCA) to the facts of the case.

¶18.    The Mississippi Limited Liability Company Act (MLLCA) in effect at the time of White Hall's formation provides the following for the admission of members:

> (1)    A person becomes a member on the later of:
>     (a)    The date the original certificate of formation is filed by the Secretary of State; or
>     (b)    The date stated in the records of the limited liability company as the date that person becomes a member.

Annotated §§ 79-29-101 *et seq.* (2009).

7

> (2) After the filing by the Secretary of State, of a limited liability company's original certificate of formation, a person may be admitted as a member:
>
> (a) In the case of a person acquiring a limited liability interest directly from the limited liability company, upon the compliance with the certificate of formation or the limited liability company agreement or, if the certificate of formation or the limited liability company agreement does not so provide, upon the written consent of all members[.]

Miss. Code Ann. § 79-29-301 (2009). White Hall filed its certificate of formation with the Secretary of State on December 17, 2007. The "limited liability company agreement" referred to the Agreement executed by Cvitanovich, McBeth, and Richards in August 2008.

¶19. Kilpatrick begins his argument with the presumption that the Agreement is not and has never been valid, and thus statutory defaults must control. Under Kilpatrick's theory of the case, because there is no valid operating agreement, the Court must look to default statutory provisions and the LLC's certificate of formation to determine how the LLC is managed, operated, and regulated. His argument begins with the proposition that he has always been a member of White Hall, so because he did not sign the Agreement, it is not enforceable under the MLLCA. His argument makes sense only if the Court accepts Kilpatrick's assertion that he was indeed a member of White Hall. Rereading Kilpatrick's argument and questioning whether he even was a member in the first place causes his argument against the validity of the Agreement to disintegrate. If Kilpatrick was never a vested member of the company, then whether or not he executed the Agreement is a moot point.

¶20.     Section 79-29-301, *supra*, does not require LLC agreements to be in force at the time of filing the certificate of formation, or that all potential members of the LLC be accounted for at the time of the certificate's filing.  The Act provides two avenues by which membership may be established: by the date of the certificate of formation, or by the written agreement of all members.

¶21.     White Hall's Agreement states that "[e]stablishment of Membership has been defined as a cash contribution of Five Hundred Thousand dollars ($500,000.00) for a membership interest of two (2) shares."  The three members who executed the Agreement each had paid capital contributions of $500,000 by the date of execution–Cvitanovich, McBeth, and Richards.  The signature page of the Agreement acknowledges capital contributions from nonmembers, stating that the three executing members

> wish to acknowledge that there are two (2) individuals . . . that have made financial contributions in an effort to acquire membership in Whitehall on MS River, LLC. It is further acknowledged and understood according to this agreement that no one is named a member until the financial obligation of $500,000 is met, and that no rights and/or privileges to Whitehall property will be permitted to anyone other than a member.

The signature page lists Kilpatrick underneath, with an acknowledgment of his capital contribution of $100,000, which earned him zero membership shares.  The signature page includes Moran as well, also possessing zero membership shares for his $400,000 capital contribution.

¶22.     However, Kilpatrick points out that he *was* listed as a member of White Hall within the Agreement's attached exhibits and on White Hall's capital account ledger on the tax returns for the years 2007 through 2010.  Exhibit B to the Agreement provides information

9

about each man associated with White Hall, along with their addresses and their balances with White Hall. The "Members" column therein lists both Kilpatrick and Moran, though their contributions each are less than $500,000.

¶23. The Court has stated that "an LLC operating agreement is a contract, subject to contract law[.]" *Bluewater Logistics, LLC v. Williford*, 55 So. 3d 148, 159 (¶ 45) (Miss. 2011). "Our law requires this Court to accept the plain meaning of a contract as the intent of the parties where no ambiguity exists." *Ferrara v. Walters*, 919 So. 2d 876, 882 (¶ 13) (Miss. 2005). Kilpatrick's arguments about being named on the tax returns or on the Agreement's exhibits would hold weight if the Agreement were ambiguous; the Agreement's terms instead are *un*ambiguous. The clear language of the Agreement requires a $500,000 contribution to become a member. Kilpatrick had contributed less than $200,000 to White Hall, and so his membership interest is nonexistent under the plain language of the Agreement.

¶24. Further, Cvitanovich testified that Kilpatrick had been listed as a member on the tax returns and as holding ownership units in the LLC only because Kilpatrick had continued to promise that the remaining $400,000 would soon arrive. Kilpatrick admitted at trial that he knew that he was responsible for a total of $500,000 to complete the purchase of land from International Paper. Through the end of 2007 and into 2008, Cvitanovich had a good-faith belief that Kilpatrick would indeed become a full member in White Hall based on the $100,000 already contributed, the promise that the rest of the money would arrive as soon

10

as the oil stocks were sold, and the word of Richards that, Kilpatrick, his longtime friend, would uphold his end of the bargain.

¶25. To prove his membership interest, Kilpatrick points to the very evidence that exists only because of his own representations to White Hall. He is listed as a member on the exhibits attached to the Operating Agreement and on White Hall's tax returns because of his representations to the other members of the company that he would timely pay his outstanding balance. In his final judgment, the chancellor stated that "[h]e who comes into equity must come with clean hands. He who seeks equity must do equity." We agree. We note that equitable principles can be applied to contract law, ***Bluewater Logistics, LLC v. Williford***, 55 So. 3d 148, 159 (¶ 43) (Miss. 2011), and hold that, under the MLLCA and the White Hall Operating Agreement, the chancellor committed no reversible error in finding Dennis Kilpatrick was not a member of White Hall on the MS River, LLC.

## II. Kilpatrick is not entitled to the return of his capital contribution of $186,500.

¶26. Kilpatrick requests that we reverse the chancellor's determination that Kilpatrick was not entitled to recovery of his capital contribution and provide for his recovery via an equitable measure such as a constructive trust. However, as quoted from Kilpatrick's own brief:

> A constructive trust is: one that arises by operation of law against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.

11

*Union Nat'l Life Ins. Co. v. Crosby*, 870 So. 2d 1175, 1181 (¶ 15) (Miss. 2004) (quoting

*McNeil v. Hester*, 753 So. 2d 1057, 1064 (¶ 24) (Miss. 2000)). As discussed above, the

members of White Hall did not engage in any fraud, duress, wrongdoing, or other

unconscionable conduct in denying a membership interest to Kilpatrick. Further, the

Agreement states that the payments made by Kilpatrick and Moran were partial contributions

toward their $500,000 membership interests, and trial testimony indicates that the members

of White Hall relied to their detriment on Kilpatrick's never-fulfilled promise to contribute

the remainder of his $500,000. Although the dissent relies on Kilpatrick's testimony that he

never saw the operation agreement until the instant dispute arose, the chancellor heard

testimony from Cvitanovich that he had provided the agreement to all for tax purposes the

year after the sale to International Paper. The chancellor resolved the conflicting testimony,

as an issue of fact, in favor of White Hall. For the foregoing reasons, we decline to establish

a constructive trust or equitable lien to return to Kilpatrick any portion of his contribution.

## CONCLUSION

¶27. Applying Mississippi Code Section 79-29-305 and the White Hall Operating

Agreement, we hold that Dennis Kilpatrick does not have a membership interest in White

Hall on MS River, LLC. He is not entitled to the return of his capital contribution to the

company. The judgment of the Harrison County Chancery Court is affirmed.

¶28. **AFFIRMED**.

**DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, KING AND MAXWELL, JJ., CONCUR. WALLER, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION. BEAM, J., NOT PARTICIPATING.**

12

**WALLER, CHIEF JUSTICE, DISSENTING:**

¶29.    Because I believe Kilpatrick is a member of White Hall on MS River, LLC, I would remand this case to the chancery court to determine "the fair value of his interest in the limited liability company as of the date of disassociation based on his right to share in distributions from the limited liability company." Miss. Code Ann. § 79-29-602 (2009).[4] Therefore, I respectfully dissent.

¶30.    White Hall on MS River, LLC ("White Hall") was incorporated as a limited liability company on December 17, 2007. According to financial records admitted into evidence, five individuals, including Kilpatrick, made contributions prior to the effective date of December 20, 2007. No operating agreement existed at the time White River accepted the capital contributions. After the formation of White Hall and the capital contribution of $100,000 by Kilpatrick, Kilpatrick received tax reporting forms for 2008, 2009, and 2010, all identifying his ownership interest as a "general" member and not as a limited member. Kilpatrick hunted on the property and enjoyed the privileges of membership. Beginning in 2008, Kilpatrick was billed for company obligations, and he paid an additional $86,520 in principal and interest on the outstanding note. When Cvitanovich was asked at trial at what point he no longer considered Kilpatrick to be a member, Cvitanovich's respond was "once we decided to sell it (a portion of the White Hall property to Soterra Corporation)," which took place in April 2010.

---

[4] Mississippi Code Section 79-29-602 was repealed effective January 1, 2011. *See* Miss. Laws 2010, ch. 534, §§ 3 and 4. It is replaced by Mississippi Code Section 79-29-602 (Rev. 2013).

¶31.    For an operating agreement to be enforceable under the Mississippi Limited Liability Company Act (MLLCA), it "must *initially* be agreed to by all of the members." Miss. Code Ann. § 79-29-306(2)(a) (2009) (emphasis added).[5] At trial, an undated operating agreement signed by only three of the members was introduced into evidence. In fact, there were only three signature lines, leaving out Kilpatrick and Murray Moran, another capital contributor. At trial, Cvitanovich testified that the agreement was signed in August 2008, though exhibits attached to the agreement reflect dates through 2010. Kilpatrick testified he was unaware of the operation agreement until it was produced after this dispute arose in 2010. When Cvitanovich was asked at trial whether *at any time* he had asked Kilpatrick to sign the operating agreement, Cvitanovich's response was "No."  The operating agreement was not signed by all of the members as required by statute, and three of those members cannot decide some time after formation what the rules are, particularly rules that provide that any contribution less than $500,000 would be considered forfeited.

¶32.    The majority notes the chancellor's finding of fact that "the creation of White Hill began with an informal gentlemen's deal" to pay $500,000 to purchase land. Maj. Op. at ¶ 2. But "[a] promise by a member to contribute to the limited liability company is not enforceable unless set out in a writing signed by the member." ***Harrell v. St. John***, 792 F. Supp. 2d 933, 939 (S.D. Miss. 2011) (quoting Miss. Code Ann. § 79-29-502(1)).[6] No such

---

[5] Mississippi Code Section 79-29-306 was repealed effective January 11, 2011. *See* Miss. Laws 2010, ch. 532, §§ 3 and 4.

[6] Mississippi Code Section 79-29-502 was repealed effective January 1, 2011. *See* Miss. Laws 2010, ch. 532, § 3.

writing exists. White Hall's records reflect that neither Kilpatrick nor any other members had any enforceable obligation to contribute any money or property to White Hall outside their unsupported oral promises.

¶33.    When an LLC does not have a valid operating agreement, we have to look at the LLC's certificate of formation and the provisions of the MLLCA to determine how the LLC is managed, operated, and regulated. ***Matter of Spires v. Lighthouse Sols.***, 778 N.Y.S. 2d 259, 4 Misc. 3d 428, 436 (2004). The MLLCA provides that "[a] person becomes a member [of an LLC] on the later of (a) the date of the original certificate of formation is filed by the Secretary of State or (b) the date stated in the records of the limited liability company as the date that person becomes a member." Miss. Code Ann. § 79-29-301(1) (2009), *revised by* Miss. Code Ann. § 79-29-301(i) (Rev. 2013).

¶34.    Because the chancellor's findings of fact and conclusions of law were erroneous, the judgment of the chancery court should be reversed, and this case should be remanded to the chancery court to determine the fair value of Kilpatrick's ownership interest in White Hall.