# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2025-CA-00089-COA

**ALLEN MIZE**                                                                      **APPELLANT**

**v.**

**HENRY M. "MICHAEL" NUNMAKER, IV AND**                    **APPELLEES**
**BACK BAY RESORT, LLC D/B/A BILOXI BAY**
**RV RESORT**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/27/2024 |
| TRIAL JUDGE: | HON. ROBERT KEITH MILLER |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | CHRISTOPHER COLLINS VAN CLEAVE |
| | PAUL MANION ANDERSON |
| | TAYLOR ELAINE FORTENBERRY |
| ATTORNEY FOR APPELLEES: | PATRICK R. BUCHANAN |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 02/10/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND LASSITTER ST. PÉ, JJ.**

**LASSITTER ST. PÉ, J., FOR THE COURT:**

¶1.     On January 20, 2020, Allen Hobbs Mize and Henry M. Nunmaker IV executed an "Operating Agreement" for Back Bay RV Resort LLC ("Back Bay" or "the LLC"), which named Mize and Nunmaker as owning equal membership-interest percentages based on capital contributions made at that time or in the future. Although Back Bay was originally formed by Mize in September 2017, the LLC's registration of officers with the Secretary of State changed over the years. By January 2020, after the execution of the contract, the LLC registration listed only Nunmaker as a member of the LLC; however, Mize remained the LLC's registered agent.

¶2. According to Mize, the intent was to construct and then operate an RV park on the Back Bay of Biloxi. Mize alleges that he discovered the site later used for the RV park, worked to get it rezoned, and negotiated sales arrangements from the original landowner. Mize further alleges that he constructed the RV park using his construction company at no cost to the LLC and that he was later involved in the park's day-to-day operations. Mize alleges that Nunmaker began freezing him out of Back Bay in March 2023 when Nunmaker refused to correspond with him, and this culminated in June 2023 when Mize was locked out of the RV park's reservation software. In September 2023, Nunmaker expressly informed Mize that he was "not a member of the LLC."

¶3. Mize filed a complaint in the Jackson County Circuit Court on April 24, 2024, asserting breach of contract, breach of fiduciary duty, breach of the covenant of good faith and fair dealing, embezzlement, intentional and fraudulent misrepresentation, negligent misrepresentation, negligence, unjust enrichment, and negligent or intentional infliction of emotional distress. Nunmaker moved to dismiss or for summary judgment. In December 2024, following a hearing, the circuit court granted Nunmaker's motion for summary judgment. The court first determined that the Operating Agreement should be construed as a contract and then found it was not valid and binding between the parties. The court also concluded that Mize's complaint was filed after the statutory limitations period had expired.

¶4. Mize appealed and raises two issues for our review. First, Mize argues that the circuit court erred by finding that the Operating Agreement was not a valid contract and granting summary judgment in Nunmaker's favor. Second, Mize argues that the circuit court erred by

2

alternatively finding that his complaint was untimely and granting summary judgment in favor of Nunmaker on that ground. After review, we reverse the order granting summary judgment.

**ANALYSIS**

**I. Whether there is a genuine issue of material fact regarding the validity of the contract.**

¶5. We review the circuit court's grant of summary judgment de novo. *Banking Grp. Inc. v. S. Bancorp Bank*, 367 So. 3d 337, 344 (¶28) (Miss. Ct. App. 2022). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). The party moving for summary judgment has the burden of proving that no genuine issue of material fact exists, and evidence provided must be viewed in the light most favorable to the non-moving party. *Walters Invs. Inc. v. Spell*, 333 So. 3d 61, 67 (¶15) (Miss. Ct. App. 2021).

¶6. We also review questions of contract interpretation de novo, noting that summary judgment is generally inappropriate where there is ambiguity in the contract. *Id.* at 68 (¶16). Indeed, the Supreme Court has held "on several occasions . . . that ultimate disposition (i.e., construction of contractual provisions) generally involves triable issues of fact[,] and, thus, disposition is inappropriate at summary judgment stage." *Pursue Energy Corp. v. Perkins*, 558 So. 2d 349, 354 (Miss. 1990).

¶7. Nunmaker filed for summary judgment, arguing that no enforceable contract existed

3

between the parties due to Mize's alleged failure to provide the necessary capital to be a member of the LLC. Nunmaker argued that because Mize could not prove he had a legal right under a binding contract, his breach-of-contract claim must fail. *See Norman v. Anderson Reg'l Med. Ctr.*, 262 So. 3d 520, 527 (¶27) (Miss. 2019).

¶8.     The circuit court, relying on *Kilpatrick v. White Hall on MS River LLC*, 207 So. 3d 1241 (Miss. 2016), made a factual determination whether Mize complied with the capital contribution requirements in the Operating Agreement. The circuit court granted summary judgment in Nunmaker's favor after finding that Mize had not contributed the necessary capital to the LLC in order to satisfy the requirements for membership.

¶9.     In doing so, the circuit court relied on the language in the Operating Agreement itself and affidavits provided by the parties, concluding that the document required members to provide a 50% capital contribution in the "cumulative amount of all cash, notes, and other property, tangible or intangible" and finding that because Mize produced only "the use of his construction company and . . . construction services at no profit or overhead" to the LLC, Mize did not satisfy the requirements of the Operating Agreement. However, the resolution of that particular question was not one for the circuit court to make at this stage in the proceedings.

¶10.    To begin, the circuit court's reliance on *Kilpatrick* was misplaced. In *Kilpatrick*, the Supreme Court affirmed the judgment of a chancery court following a bench trial. *Id*. at 1241 (¶1). The chancellor in that case was sitting as the fact-finder and was thus charged with determining the fact question of whether an agreement was valid and enforceable. *See id*. at

4

1245 (¶¶12, 17). That was not the circuit court's role in the instant case at the summary judgment stage. The circuit court should have determined whether a genuine issue of material fact existed at all—not the resolution of that fact question.

¶11. Additionally, whether a valid contract exists is "a question of fact that is to be determined by a jury, or a trial judge when a trial is conducted without a jury." *Crow v. Crow's Sports. Ctr. Inc.*, 119 So. 3d 352, 356 (¶9) (Miss. Ct. App. 2012). Further, "where the existence of a contract turns on [the] consideration of conflicting evidence, that presents a question of fact properly presented to, and determined by," the fact-finder. *Parish Transp. LLC v. Jordan Carriers Inc.* 327 So. 3d 45, 55 (¶30) (Miss. 2021).

¶12. In this case, we hold that there were material facts in genuine dispute concerning the existence of a binding agreement between the parties, specifically whether Mize had met his capital obligation for membership as required by the Operating Agreement. The document provided that the parties "acknowledged" the "receipt and sufficiency" of "the mutual promises, covenants and undertakings" contained in the document, as well as the "other good and valuable consideration" provided for in the document. The Operating Agreement also noted that the members "have made or shall make contributions to the capital of the Company resulting in" a 50-50 membership of the LLC. The precise number required to meet 50% investment is not provided in the contract. Additionally, the contract defines "contributed capital" as "the cumulative amount of all cash, notes, and other property, tangible or intangible," made by each member of the LLC.

¶13. Mize's affidavit, which the circuit court relied on in granting summary judgment,

5

noted that he had contributed intangible capital to the LLC by locating and securing the land to be used for the RV Park and handling all construction on the property at no cost to the LLC. Whether these contributions satisfied the membership requirements of the Operating Agreement is a question for the fact-finder. Indeed, the satisfaction of the membership requirements is the genuine issue of material fact surrounding Mize's breach-of-contract claim, as there can be no breach of contract without a valid contract.

¶14.    The circuit court erred by granting Nunmaker's motion for summary judgment, as a genuine issue of material fact exists whether there is a valid and enforceable contract between the parties, specifically, whether conditions of membership have been satisfied.

**II.      Whether there is a genuine issue of material fact regarding the statute of limitations.**

¶15.    The circuit court additionally found that the applicable statute of limitations barred Mize's complaint and dismissed it for that alternative reason. The court based this conclusion on the fact that Mize's name as an LLC member had been removed from the Secretary of State filings on March 16, 2018, and that the Operating Agreement had been signed on January 20, 2020. The court concluded that Mize knew he was not a member of the LLC on March 16, 2018, or at the latest when the contract was signed on January 20, 2020. The circuit court concluded that on at least one of these dates, the alleged breach of contract occurred, and the limitations period of Mississippi Code Annotated section 15-1-49 (Rev. 2019) began to run.

¶16.    In cases of breach of contract, "the cause of action accrues at the time of the breach, regardless of the time when the damages from the breach occurred." *Wallace v. Greenville*

6

*Pub. Sch. Dist.*, 142 So. 3d 1104, 1107 (¶9) (Miss. Ct. App. 2014). Generally,

> the statute of limitations commences upon discovery of an injury, and discovery is an issue of fact to be decided by a jury when there is a genuine dispute. Therefore, the critical question with which we are confronted is whether, in a summary judgment context, we can identify as a matter of law, the point at which [the plaintiff] knew or should have known or should have made an inquiry, based on the information available to him.

*Weathers v. Metro. Life Ins. Co.*, 14 So. 3d 688, 692 (¶14) (Miss. 2009) (citation and emphasis omitted). "[O]ccasionally the question of whether the suit is barred by the statute of limitations is a question of fact for the jury; however, as with other putative fact questions, the question may be taken away from the jury if reasonable minds could not differ as to the conclusion." *Stringer v. Trapp*, 30 So. 3d 339, 342 (¶12) (Miss. 2010).

¶17.     Mize argues that the limitations period did not begin to run until Mize was effectively shut out of Back Bay, which he describes as "a gradual course of action that began in March 2023 and culminated in June 2023." Mize also argues that despite efforts to cut him out, he is still a member of Back Bay per the terms of the Operating Agreement, which require a vote and action to remove him as a member.

¶18.     Nunmaker argues that Mize knew or should have known in July 2020 that Nunmaker did not consider him to be a full member of Back Bay, as Mize produced an email sent by Nunmaker on July 27, 2020, outlining his belief of the membership interests in the company, which did not include Mize. Mize argues that this email was sent after the January 2020 Operating Agreement, which provided the only way to alter membership interests, so it contained only Nunmaker's alleged "self-serving fantasy." Mize also argues that he continued to receive regular correspondence regarding the ownership and running of the

7

LLC, signed contracts on behalf of the LLC, and had access to all registration and sales systems for the LLC until June 2023. Because of this involvement, Mize argues he had no reason to believe that Nunmaker was freezing him out of the LLC until these events.

¶19. We hold that granting summary judgment on the statute of limitations was premature, as questions of fact remain regarding when Mize knew or should have known that Nunmaker was freezing him out of the LLC. Additionally, it is unclear how Mize would have known in March 2018 that Nunmaker allegedly breached a contract that did not exist until January 2020. It is also unclear how or why Mize would have known that Nunmaker breached the Operating Agreement on the day it was signed, as the circuit court concluded without explanation. Aside from these erroneous findings by the circuit court, factual questions still remain as to when Mize knew or should have known that Nunmaker breached the parties' alleged contract.

## CONCLUSION

¶20. Because genuine issues of material fact exist regarding Mize's membership in the LLC and when his cause of action began to accrue, we reverse the circuit court's order granting summary judgment and remand for further proceedings consistent with this opinion.

¶21. **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER AND WEDDLE, JJ., CONCUR.**

8